**STATE of Missouri, Respondent,**

v. .

**Elmer Richard HAYES, Appellant.**

**No. 56044.**

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1971.

John C. Danforth, Atty. Gen., Neil Mac-Farlane, Asst. Atty. Gen., Jefferson City, for respondent.

J. Richard Roberts, G. William Weier, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

STOCKARD, Commissioner.

Appellant, Elmer Richard Hayes, was charged in separate informations with murder in the first degree of Thomas Jasper Hayes and Dorothy Hayes. Although the last names are the same, the victims were of no relation to appellant. The two cases were consolidated for trial, and appellant was found guilty of both murders and sentenced to life imprisonment on each charge.

From the evidence, including the contents of a confession, a jury reasonably could find that on February 12, 1967, appellant entered Club 8-East in Washington County,

Missouri, displayed a pistol, and told Mr. and Mrs. Hayes that "it was a robbery." He told them to lie face down on the floor behind the counter, and appellant then "crawled over the bar and shot [each of] them in the head" three times.

Appellant's first contention is that the court erred in admitting into evidence a written signed confession for the reason that it was involuntarily given.

The trial court held a hearing out of the presence of the jury on appellant's motion to suppress, and at the conclusion thereof it entered detailed findings that the confession was understandingly and voluntarily given without promise, threat or inducement.

Shortly after the murders, appellant was questioned concerning them while he was in jail for parole violation, and he denied any knowledge thereof. He was returned to the Missouri Department of Corrections, and served the remainder of the sentence from which he had been paroled. Thereafter, in the State of Nevada he entered a plea of guilty to the crime of robbery committed in that State and was sentenced to imprisonment for a term of fifteen years.

■ At the hearing on the motion to suppress and at the trial appellant denied that he committed the murders, and he testified that he made the confession in order not to be subject to the conditions imposed on him in the Nevada prison. We shall briefly set forth the circumstances leading up to the confession.

On September 15, 1968, appellant was placed in the maximum security section of the Nevada prison, and because of violation of prison rules he remained in some type of maximum security until he was released to the prosecuting attorney and sheriff of Washington County on July 16, 1969.

On January 15, 1969 the prosecuting attorney of Washington County received a letter from appellant in which he indicated he had knowledge concerning the murders of Mr. and Mrs. Hayes, and in which he stated "it would be to the best interest to you and your office if you could come and talk to me." The prosecuting attorney went to the Nevada prison, and appellant orally confessed that he had murdered Mr. and Mrs. Hayes, but he refused to sign a written statement until certain conditions were met. He wanted the prosecuting attorney to get some money from a person in Las Vegas, Nevada which appellant claimed was his. In addition, according to the prosecuting attorney, "before he would agree to come back to Missouri and stand prosecution and enter pleas to these two crimes, the Sheriff of Washington County would have to promise him that he would be kept in the jail at Washington County so that it would be convenient for him to visit with his family," and that "he not be rushed away to the Missouri penitentiary after he entered his guilty pleas, but that he be permitted to stay at the Potosi jail for awhile so that he could visit with his family." On January 22, the prosecuting attorney advised appellant by letter that he could not obtain the money, that the sheriff had agreed to confine him in Washington County until transferred to the penitentiary, that he would not have control over the length of time necessary to process the cases, but he believed that appellant would be in the Washington County jail four to eight weeks before transfer to the penitentiary. On April 27 appellant answered the prosecutor's letter and said, "I am ready and willing to come to Missouri with you anytime you can make arrangements to come and get me." The prosecuting attorney again went to Nevada, and appellant waived extradition but he refused to sign a statement so the prosecutor returned to Missouri without him. However, the prosecutor later returned to Nevada, and on July 16 appellant was released to his custody. Before leaving for Missouri by airplane appellant signed the written confession, and he testified at the hearing on the motion to suppress that the prosecuting attorney made no threat or promise to him to obtain his confession. He also said that no one at the Nevada prison made any threat or

promise to him, but, without further explanation, he added that "they led me to believe that it would be better for me" if he signed a confession.

There is no contention that appellant was not given all the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, or that he did not understand that his confession could be used against him in court, or that he did not understand the maximum and minimum punishment for the two crimes to which he confessed. In fact, before the confession was signed, the prosecutor advised appellant by letter that he had filed two charges of first degree murder against him, that the punishment for first degree murder was death or life imprisonment, and that he was "free to recommend the death penalty or life imprisonment," and that the "sentencing judge will be entirely free to make his own decision whether to impose the death penalty or life imprisonment."

"In order to render a confession allegedly induced by force or violence inadmissible, the force or violence must have been exercised for the purpose of inducing the confession, and the confession must have been in consequence of the unnecessary force used. The use of such violence or force as is necessary to effectuate the arrest or confinement of the accused will not affect the voluntary character of a confession made after his arrest." 29 Am.Jur.2d Evidence § 567. In this case, appellant opened the discussion concerning the murders by asking the prosecutor to talk to him, and by orally confessing to the murders. There was no inducement, or benefit, or reward extended to him by anyone. Appellant now makes the somewhat unusual contention that he desired to get out of the Nevada prison where he had a fifteen year sentence, and thereby avoid the disciplinary punishment brought on by his misconduct, so he could be returned to Missouri to face two charges of first degree murder even though he knew that the only punishment for first degree murder was life imprisonment or

death. But, he unequivocally testified that the signing of the written confession was his choice, and that his decision was not the result of any threat, promise or inducement made by anyone in authority. In fact, in one of his letters to the prosecuting attorney he stated: "As I told you before seeing him [appellant's father who was in poor health] before he dies is the only reason I am agreeing to come back there." Apparently it was only after appellant got back to Missouri that he decided that the reason he confessed to the two murders was to escape the punishment at the Nevada penitentiary.

"The fact that an accused may think that it will be better for him if he confesses, or worse for him if he does not confess, is of no importance on the question of the voluntary character of his confession, if that condition of mind is brought about by his own independent reasoning." 29 Am.Jur.2d Evidence § 559. For a comparable situation see Langdeau v. State of South Dakota, 8 Cir., 446 F.2d 507, where an accused contended that he entered a plea of guilty because "of the conditions of his confinement" in the county jail and his dislike of the food being given him. That court concluded the accused's discontent with his existence in jail was only a circumstance motivating the timing of his decision to plead guilty, and that the "significant test" was whether the plea of guilty was " 'an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." ' " In Verdon v. United States, 8 Cir., 296 F.2d 549, 552, it was held that "dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea." See also Collins v. State, Mo., 450 S.W.2d 186, 190, and Coleman v. State, Mo., 473 S.W.2d 692.

The trial court resolved the factual issues contrary to appellant's contention, and it correctly admitted appellant's confession into evidence.

Appellant next contends that he was denied a fair trial by an impartial jury because (a) a majority of the jury was selected by the sheriff from his acquaintances when the sheriff knew he would be a witness; (b) the sheriff participated in the trial as a witness and also as bailiff and custodian of the jury; and (c) the prosecuting attorney participated as prosecutor and the chief witness for the State.

We are constrained to hold that the judgment in this case must be reversed because of the prejudicial effect of the prosecuting attorney actively prosecuting the case and also being the principal witness for the State as to the only real factual issue to be decided by the jury. For this reason we need not rule on the contentions concerning the activities of the sheriff. In the event of another trial care should be exercised to prevent the occurrence of unnecessary questionable conduct.

As previously noted, the prosecuting attorney negotiated with appellant to obtain the confession. It was in question and answer form; the prosecuting attorney asking the questions and appellant making the answers. Although an assistant attorney general was present at the trial and entered his appearance for the State, he took little part. Instead, the prosecuting attorney conducted the voir dire examination, he made the opening statement and examined and cross-examined most of the witnesses, and he made the opening and closing argument to the jury. He knew that he intended to testify because he had endorsed his name on each information and he also mentioned in his opening statement that he would do so.

Appellant admitted in his testimony that he made all the admissions of guilt in the confession and that he voluntarily signed it, but he denied that the statements were true, and he stated that he untruthfully admitted guilt "to get out of the [Nevada] penitentiary."

The prosecuting attorney testified in detail concerning the meetings between him and appellant at the Nevada penitentiary and the negotiations between them leading up to signing of the confession. He also testified that prior to the time the confession was made they did not discuss the details of the murders, and that he did not tell appellant the location of the bodies of the victims, or the number of wounds and where they were located, or the caliber of the gun used to commit the murders. All of this information was contained in the answers of appellant to the questions of the prosecuting attorney which constituted the confession. In oral argument the prosecuting attorney commented on his own testimony and argued that appellant had to have committed the murders because he had not been told of the factual matters above set forth, but he knew about them and accurately related them in his confession. On the other hand, appellant testified that he and the prosecutor did discuss the details of the crimes "to some extent," and that in the early negotiations he refused to discuss them because he "didn't know them then," and as to the details he did not know, the prosecuting attorney supplied him with "the biggest part * * * that went in that statement." In this manner the principal factual issue to be determined required the jury to resolve the issue of credibility of appellant on one side and the prosecutor on the other.

■ A prosecuting attorney is not incompetent to be a witness, State v. Stiltner, 61 Wash.2d 102, 377 P.2d 252, and the trial court may exercise discretion in determining to what extent and as to what matters he may be permitted to testify. State v. Lee, 203 S.C. 536, 28 S.E.2d 402, 149 A.L.R. 1300. However, the general and uniform rule is that the right of a prosecuting attorney to testify in a criminal case "is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case. Even then, his functions as a prosecuting attorney and as a witness should be disassociated. If he is aware, prior to trial, that he will be a necessary witness,

**692**

or, if he discovers this fact in the course of the trial, he should withdraw and have other counsel prosecute the case." Tomlin v. State, 81 Nev. 620, 407 P.2d 1020. See also, Jenkins v. State, 242 Miss. 646, 136 So.2d 580; Adams v. State, 202 Miss. 68, 30 So.2d 593; State v. Nicholson, Mo.App., 7 S.W.2d 375; Robertson v. Commonwealth, 269 Ky. 317, 107 S.W.2d 292; Robinson v. United States, 8 Cir., 32 F.2d 505, 66 A.L.R. 468; State v. Blake, 157 Conn. 99, 249 A.2d 232; Clark v. State, Okl.Cr., 370 P.2d 46.

The above general rule announced in the case law is expressed in the rules of this court. Supreme Court Rule 4.19 (now repealed but in effect at the time this case was tried) provided that "When a lawyer is witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except, when essential to the ends of justice, a lawyer should avoid testifying in Court in behalf of his client." For the present rule, see DR5–101 and DR5–102, V.A.M.R. See State v. White, 339 Mo. 1019, 99 S.W.2d 72, where the application of the rule to testimony by a prosecuting attorney is discussed, but where no objection was made to the testimony of the prosecutor.

■ , In this case the prosecuting attorney occupied conflicting positions as a witness for the State and as a prosecutor, Adams v. State, supra, and as a public official "in whom the public has reposed confidence, his evidence is ordinarily given greater weight than that of an ordinary witness, and the natural tendency in such case is for defendant to question the fairness of a trial when [the prosecutor] becomes a witness for the state. Therefore, he should, when that becomes necessary, so conduct himself as to foster and demonstrate the fact that he is not actively participating as a prosecutor, but only as a witness, truthfully and impartially giving competent testimony." Frank v. State, 150 Neb. 745, 35 N.W.2d

816. The trial court should have sustained the objection of appellant to the prosecutor testifying and continuing to actively prosecute the case.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.