**STATE of Missouri, Respondent,**

v.

**Samuel S. JOHNSON, Appellant.**

No. 67093.

Supreme Court of Missouri, En Banc.

Dec. 17, 1985.

Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

Honorable William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

BILLINGS, Judge.

Defendant Samuel S. Johnson was convicted of forcible rape in violation of § 566.030, RSMo Supp.1983 and was sentenced as a persistent offender to life imprisonment without possibility of parole for 30 years. We granted transfer of the case from the court of appeals to consider defendant's contention that the entire prosecuting attorney's office was disqualified from prosecuting him because a nonparticipating assistant prosecutor was a witness for the State. We affirm.

The victim in this case, E.A., was the seventh woman raped in a short period of time in the Westport area of Kansas City. She was raped in her apartment during the early morning hours of August 29, 1982.

E.A.'s account of the crime detailed how the rapist, before repeatedly raping her, held his knife to her throat and threatened her with death unless she acceded to his demands.

E.A. was able to give police a detailed description of the rapist. Her description closely paralleled the descriptions that the police had obtained earlier from the other rape victims in the area. The rapist was described as a "black male, late 20's to 40 years of age, five feet eight inches to six feet in height, approximately 160 pounds, with a strong body odor, sweats profusely, wears a baseball cap on which appears a logo and carries a silver-handled pocket knife with rusted blades."

At about one o'clock a.m., on September 4, 1982, four Kansas City Police Reserve Unit officers,[1] Shaffer, Irvin, Sarver and Komoroski, set out to patrol the Westport area. Shaffer and Irvin rode together in one car while Sarver and Komoroski were in another car.

Accompanying Komoroski and Sarver on patrol was Patricia McGarry, an assistant prosecutor with the Jackson County Prosecuting Attorney's Office. She wanted to observe a standard police patrol operation.

About two hours after they had begun patroling, Komoroski, along with Ms. McGarry, left the vehicle and proceeded on foot while Sarver continued to patrol in the car. Komoroski and Ms. McGarry entered an alley and exited onto a street. At that time they saw defendant standing on the side of the street near some bushes. Komoroski moved closer toward defendant and saw defendant was wearing a baseball cap with a logo and that he appeared to

match the description of the Westport rapist. The police officer also detected a body odor on defendant.

Komoroski identified himself as a police officer and told defendant that he would like to speak with him. Before doing so, however, the officer conducted a pat-down frisk of defendant and felt a hard object in one of defendant's rear pockets. This object turned out to be a silver-handled pocket knife with rusted blades—similar to the one the rapist was thought to carry. Komoroski asked defendant a number of questions concerning his identity and residence. With the assistance of Sarver, who by this time had arrived with the vehicle, the two officers contacted police headquarters to run a computer check on defendant. The computer check revealed that defendant had previously been convicted of rape and burglary. Defendant was informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and was placed under arrest for the rape of E.A.. He was then transported to the police station where he was later placed in a lineup and was positively identified by E.A. as the man who raped her on August 29, 1982.[2]

We turn first to the question of whether the entire prosecutorial staff of the Jackson County Prosecuting Attorney's Office should have been disqualified from prosecuting defendant because sometime after defendant's arrest on September 4, 1982, reserve police officer Komoroski, who was to testify as a witness for the State, passed the Missouri Bar Examination and joined the prosecuting attorney's staff as an assistant prosecuting attorney.[3] Defendant

---

**1.** Members of the Kansas City Police Department's Reserve Unit receive the same training as regular officers, but are used primarily to augment the strength of the regular force. Officers in the Reserve Unit usually work one night each week, and when on duty they perform the same duties assigned regular officers.

**2.** Defendant advances a number of arguments concerning the constitutionality of the lineup in which he was placed and from which he was identified. We have reviewed each identification argument and carefully examined the pho-

tograph of the lineup—and we conclude that the lineup and subsequent identifications were constitutional in every respect.

**3.** At the outset we note that the substance of defendant's argument focuses exclusively upon the activity of Komoroski and mentions only fleetingly the initial presence of Ms. McGarry. Had defendant treated Ms. McGarry's limited involvement in other than a de minimis fashion, the result we reach today would remain unchanged.

assigns reversible error to the trial court's failure to appoint a special prosecutor and advances three reasons in support of his argument. He contends the Jackson County Prosecuting Attorney's Office should have been disqualified because the office had a personal interest in the outcome of the case which might have influenced his prosecution; allowing the prosecutor's office to continue in the case created an impermissible appearance of impropriety; and failure to appoint a special prosecutor deprived him of a fair trial.

At the time of defendant's arrest, Komoroski had recently completed law school and had been working as a legal intern at the prosecuting attorney's office. Contrary to defendant's frustrating obfuscation of the facts surrounding Komoroski's professional status and involvement in this case, the record is clear that at the time of defendant's arrest Komoroski was neither an assistant prosecuting attorney nor even an attorney, and during the prosecution of defendant he had absolutely no prosecutorial duties or responsibilities in connection with the case.

**4.** In his motion to disqualify and motion for a new trial, defendant rested his argument on Disciplinary Rule 5–105(A)–(D) and Ethical Consideration 5–15—maintaining that Komoroski's involvement in the case created a conflict of interest in violation of the general prohibition against representing two or more clients who may have differing interests. At some point thereafter, defendant decided to rest his argument on Disciplinary Rules 5–101(B) and 5–102. Our review of this issue encompasses only defendant's final selection of authority.

**5. DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment**
\* \* \* \* \* \*
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

Defendant contends that a number of prior Missouri appellate decisions require disqualification under the facts of this case and that specific provisions [4] of Missouri's Code of Professional Responsibility govern the facts of this case and clearly call for disqualification.

Our initial task is to determine whether Disciplinary Rules 5–101(B) and 5–102,[5] which address the matter of disqualification of a private law firm when one of its members is or ought to be a witness in a case in which the firm has undertaken representation, governs with equal force and purpose the conduct of a prosecuting attorney's office when a member of the staff, not assigned to the particular case, is scheduled to appear as a witness for the State.

Disciplinary Rules 5–101(B) and 5–102 stand for the general proposition that an attorney should not simultaneously serve as trial advocate and witness. *See* Enker, The Rationale of the Rule That Forbids a Lawyer to be Advocate and Witness in the Same Case, American Bar Foundation Research Journal (Spring 1977); Sutton, The Testifying Advocate, 41 Tex.L.Rev. 477; H.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
**DR 5–102. Withdrawal as Counsel When the Lawyer Becomes a Witness**
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(b)(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Brown & L. Brown, Disqualification of the Testifying Advocate—A Firm Rule?, 57 N.C.L.Rev. 597 (1979). The reasons underlying this rule are set forth in Ethical Consideration 5–9 of Missouri's Code of Professional Responsibility. First, a lawyer who serves as both trial counsel and witness is open to impeachment on the basis of an apparent interest in the outcome of the trial and is thus rendered less effective as a witness. Second, a lawyer who assumes both of these roles in a single case makes it more difficult for opposing counsel to conduct effective cross-examination and creates an awkward scenario in which one advocate must challenge the credibility of his legal adversary. Third, the lawyer who assumes the role of a witness must argue his own credibility, which may serve to weaken his credibility and effectiveness as an advocate. Finally, the two roles are said to be simply inconsistent. These reasons, though, have greatest purpose when the witness and advocate are one and the same. However, the general rule set forth in Disciplinary Rules 5–101(B) and 5–102 also applies where the trial attorney is not the witness himself, but is only a member of the same firm as the attorney appearing as a witness.

Though the application of the general rule to multi-member firms has come under fire by commentators in recent years, the arguments advanced most frequently for its continued application are that it guards against the appearance of impropriety and that every member of a firm continues to have a common interest in the financial outcome of a case in which the firm is involved. *See People ex rel. Younger v. Superior Court,* 86 Cal.App.3d 180, 150 Cal.Rptr. 156 (1978). However valid these rationales may be in connection with a multi-member private firm, we believe they have no application when the facts involve a multi-member prosecuting attorney's office.

In contrast to a private firm, a prosecuting attorney's office has no financial interest in the outcome of a case. *Ford v. State,* 4 Ark.App. 135, 628 S.W.2d 340 (1982). This distinction between a private

law firm and the office of a prosecuting attorney is but only one of many ways in which the duties and obligations of the latter differ in kind and degree from the duties and obligations of the former.

Canon 7, in general terms, directs that a lawyer should zealously represent his client within the bounds of the law. In terms of day to day practice, this language means that a private practioner's primary role as an advocate is to secure the legal objectives of his client. Shed of its euphemistic garb, this language means that his job is to win for his client. The duties and responsibilities of a prosecuting attorney, however, extend beyond the immediate task-oriented goal of winning a case. Ethical Consideration 7–13 points out that "the responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." This ethical consideration, though admittedly only aspirational in nature, is given greater weight and meaning by the substance of Disciplinary Rule 7–103(A) and (B), which in combination prohibit a prosecuting attorney from instituting criminal charges without probable cause and require him to disclose to a criminal defendant any evidence that tends to negate guilt, mitigate the degree of the offense or serves to reduce the punishment. Thus, it becomes apparent that the "partisan" interest normally attributed to the private practitioner who serves as trial advocate differs in a fundamental way when the trial advocate is a prosecuting attorney. *See generally, United States v. Hubbard,* 493 F.Supp. 206, 208 (D.D.C.1979), aff'd. *sub. nom United States v. Heldt,* 668 F.2d 1238 (D.C. Cir.1981), *cert. den.* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *Ford v. State,* 628 S.W.2d at 343; *People ex rel. Younger v. Superior Court,* 86 Cal.App.3d at 202–06, 150 Cal.Rptr. at 170–76; *State ex rel. Goldsmith v. Superior Court of Hancock County,* 270 Ind. 487, 386 N.E.2d 942, 945 (1979).

Defendant argues that there exists the danger of the jury attaching too much weight to the testimony of Komoroski be-

cause he is an assistant prosecuting attorney. First, we observe that this argument is actually the converse of the rationale found in Ethical Consideration 5–9 which in substance suggests that the danger lies in the fact that the witness-advocate's credibility will be weakened and the jury will attach too little weight to his testimony. Further, we fail to see how appointment of a special prosecutor would impact upon Komoroski's professional status. No matter who prosecutes the case, witness Komoroski would still be an assistant prosecuting attorney. Defendant, however, has failed to notice that the remedy for this situation lies in an effective cross-examination. As the California Court of Appeals noted in connection with this issue, "most defense counsel would undertake [this] task with relish." *People ex rel Younger v. Superior Court*, 86 Cal.App.3d at 206, 150 Cal. Reptr. at 172.

Having examined the various rationales behind Disciplinary Rules 5–101(B) and 5–102, we conclude that they have little relevance and limited purpose when the question presented involves the disqualification of the entire staff of a multi-member prosecutor's office.[6] *Accord, Ford v. State*, 628 S.W.2d at 343; *People ex rel. Younger v. Superior Court*, 86 Cal.App.3d at 210, 150 Cal.Reptr. at 175; *State v. Clausell*, 474 So.2d 1189, 1191 (Fla.1985); *State ex rel. Goldsmith v. Superior Court of Hancock County*, 386 N.E.2d at 945.

Next, we consider defendant's position that prior decisions of this Court and the court of appeals mandate the disqualification of the entire staff of the Jackson County Prosecuting Attorney's Office.

In *State v. Jones*, 306 Mo. 437, 268 S.W. 83 (1924), this Court reversed a conviction for driving while intoxicated because the prosecutor, whose automobile was struck by defendant's car, failed to act as a disinterested prosecuting attorney in filing an information against the defendant. A spe-

cial prosecutor had already been appointed to prosecute the case, but the Court, nevertheless, held that the information was defective because the statute authorizing the prosecutor to file an information "never contemplated that he should be empowered to set in motion criminal proceedings against a citizen in a case in which he is interested." *Jones, supra*, at 446, 268 S.W. at 86. The decision to reverse the conviction turned on the fact that the prosecuting attorney was an interested party; and allowing him to file an information in his official capacity charging defendant with a crime of which the prosecutor was a victim resulted in a corruption of the safeguards established to protect citizens from partisan prosecutions. *Jones, supra*, at 446, 268 S.W. at 85–86. *Jones* is both factually and legally distinguishable from the present case.

In *State v. Hayes*, 473 S.W.2d 688 (Mo. 1971), the prosecuting attorney had personally obtained an oral confession from the defendant and then proceeded to both try the case and appear as a witness. Because the prosecutor in *Hayes* was both witness and trial advocate, he was required to argue his own credibility in connection with the critical issue in the case—the validity of the defendant's oral confession. The Court in *Hayes* observed that when a prosecuting attorney must testify as a witness, "his functions as a prosecuting attorney and as a witness should be disassociated." *Id.* at 691. *Hayes* does not call for the per se disqualification of a prosecutor's office simply because one member of that office is to appear as a witness for the state in an upcoming case. *Hayes* requires only that when it becomes necessary for a member of a prosecuting attorney's office to appear as a witness for the state, that he should " 'so conduct himself as to foster and demonstrate the fact that he is not *actively* (our emphasis) participating as ... prosecutor, but only as a witness truthfully and impartially giving competent testimony.' "

6. Effective January 1, 1986, the professional conduct of lawyers in Missouri will be governed by a newly adopted set of rules—the "Rules of Professional Conduct". Current Rule 4 and the code set forth in it will be replaced with a new rule embodying a new set of directives and commentary. *See* 693 S.W.2d XXXVIII (Mo. banc 1985).

*Hayes, supra,* at 692 (quoting *Frank v. State,* 150 Neb. 745, 35 N.W.2d 816 (1949)). The prosecutor in *Hayes* failed to abide by this standard. However, the record in the present case amply demonstrates that Komoroski served only as a witness and in no way participated in defendant's prosecution as an assistant prosecuting attorney. Defendant's reliance on *Hayes* to support his position is misplaced.

Defendant also cites *State v. Nicholson,* 7 S.W.2d 375 (Mo.App.1928), where a prosecuting attorney filed an application for a search warrant, assisted in serving the warrant, testified at trial in connection with the circumstances surrounding the search and actively prosecuted the case. In reversing the conviction the court of appeals noted that throughout the course of the trial the personal interest of the prosecutor in the outcome of the case was obvious. On cross-examination, the prosecutor began to interrogate the defendant on matters outside the record of which he had knowledge only because of his personal involvement in the investigation. The prosecutor in *Nicholson* clearly transgressed the bounds of appropriate conduct, and the court of appeals correctly held that "his showing of personal interest is so great that a conviction secured under such circumstances ought not to stand." *Id.* at 379. *Nicholson* does not control the present case. None of these cases stand for a rule which mandates the wholesale disqualification of an entire prosecutor's office when a single nonparticipating assistant prosecutor is to testify in a case for the State.

■ Here, Komoroski served only as a witness, and at no time donned the hat of trial advocate. The State did not highlight or place undue emphasis on the fact that Komoroski was an assistant prosecuting attorney, and during closing argument when the prosecution mentioned defendant's apprehension and that a knife was found in his possession, the prosecutor noted that he was "placed under arrest by officers of the Kansas City ... Police Department." The mere fortuity that a nonparticipating assistant prosecutor is to appear as a witness in a particular case does not by itself lodge in an entire prosecutor's staff an impermissible personal interest in the outcome of the case.[7] Defendant's position would result in unrestricted and unending disqualification of an entire prosecutor's office in connection with perjury prosecutions requiring the testimony of a prosecuting attorney or a member of his staff, or in connection with problems associated with the taking of confessions, lineups or any other phase of the criminal justice process that may call for the presence of a member of a prosecuting attorney's office. *State v. Clausell,* 474 So.2d at 1191. The record in this case is strikingly free of professional impropriety and nowhere in it do we find even the slightest appearance of impropriety.

■ We conclude that the trial court did not abuse its discretion in refusing to sustain defendant's motion to disqualify the entire staff of the Jackson County Prosecuting Attorney's Office.

Defendant challenges the constitutionality of the seizure of his baseball hat and silver-handled pocket knife by police at the time of his arrest—which he also challenges as being constitutionally infirm. He contends that there was neither probable cause to arrest nor probable cause to search and the evidence seized should have been suppressed because it was the product of a constitutionally defective search and seizure.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), established that in certain circumstances it is constitutionally permissible for police to stop persons they encounter on less than full probable cause. *See Adams v. Williams,* 407 U.S. 143, 92

---

**7.** *See United States v. Cerone,* 452 F.2d 274 (7th Cir.1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972); *United States v. Hubbard,* 493 F.Supp. at 208; *Ford v. State,* 628 S.W.2d at 343; *People ex rel. Younger v. Superior Court,* 86 Cal.App.3d at 202–06, 150 Cal.Rptr. at 170–76; *State ex rel. Goldsmith v. Superior Court of Hancock County,* 386 N.E.2d at 942.

S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Purnell,* 621 S.W.2d 277 (Mo.banc 1981).

Before this year, the United States Supreme Court had not yet expressly addressed the application of a *Terry* stop to a person suspected of past criminal conduct. However, in *United States v. Hensley,* —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Supreme Court held that "if police have a reasonable suspicion, grounded in specific and articulable facts that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Hensley, supra,* 105 S.Ct. at 681. *See also State v. Fernandez,* 691 S.W.2d 267 (Mo.banc 1985).

■ In the present case the police encountered defendant in the early morning hours standing in the shadows near some bushes in the same area where seven rapes had been committed. More importantly, the officers encountered a person who closely matched the description of the rapist. The pat-down search that was conducted was reasonable in light of the fact that the officers had been told that the rapist was armed with a knife.

This intrusion upon defendant's right to be secure in his person and things, when balanced against the government's strong interest in apprehending the rapist, appears wholly reasonable and closely tied to the circumstances surrounding the initial stop. *See Hensley, supra,* 105 S.Ct. at 680; *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ When Komoroski stopped defendant, he was "authorized to take such steps as were reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop." *Hensley, supra,* 105 S.Ct. at 684. After the police officers discovered defendant's knife, which matched the description of the knife that the rapist was said to carry and after they learned that he was a convicted rapist, combined with his unexplained presence at that location at that time of night, the police at that point had probable cause to place him under arrest. The investigatory stop which preceded defendant's valid arrest was entirely reasonable under the principles of *Terry* and the requirements of the Fourth Amendment, and the evidence obtained as a result of the stop was properly admitted at trial.

Defendant next contends the trial court erred in failing to sustain his motion for a mistrial because of the State's failure to fully comply with defendant's request for discovery under Rule 25.03.[8] Before trial, defendant had filed a written discovery request for "any written or recorded statements and the substance of any oral statements made by ... defendant ... [and] a list of all witnesses to the making, and a list of all witnesses to the acknowledgement of such statement, and the last known address of such witnesses."

The evidence that was not disclosed to defense counsel were the statements defendant made to the arresting officer concerning where he lived and where he had been earlier in the evening. At trial, Komoroski's testimony on direct examination detailed those statements in the following manner:

A. Well, at about this time, Sgt. Sarver, who was driving the vehicle, approached from eastbound on the 44th Street, and he pulled up and stopped where I was standing with

---

**8.** It should be pointed out that defendant's argument does not suggest that the prosecution engaged in any type of official misconduct and the record reveals that the prosecution in good faith believed that the oral statements that defendant made to Komoroski concerning his residence and activities the evening of his arrest fell outside the scope of defendant's discovery request. On appeal, the State concedes that its failure to disclose these statements violated the express letter of the rule but, nevertheless, maintains its failure to do so and the admission of the evidence did not prejudice "the [defendant] to any appreciable degree."

We add to this observation that our criminal discovery rules serve important purposes and the fact that in a given case the State's failure to fully comply with a discovery request may prove harmless, the State, nevertheless, has a continuing and affirmative duty to fully comply with this Court's discovery rules.

Samuel Johnson. I asked him or we asked him, who he was, to identify himself and where he lived. He, I believe, gave us a Missouri identification car with the name Samuel Johnson and an address of 1925 Main. We asked him if he still resided there, and he said, "No, I haven't lived there for some time." We then asked him where he had been that evening. He said he had been at a friend's house on Holly, and we asked him where on Holly, and he was unable to give us an address. We asked him could he point it out, and he indicated he couldn't point it out where the house was.

Defense counsel objected and sought a mistrial on the theory that the State's failure to disclose this evidence materially prejudiced defendant.

▇ Whether a sanction[9] should be imposed for failure to comply with an appropriate discovery request or order is a matter which lies within the sound discretion of the trial court. *State v. Kerfoot*, 675 S.W.2d 658 (Mo.App.1984); *State v. Bryant*, 658 S.W.2d 935 (Mo.App.1983). *See also* Rule 25.16. Here, the only remedy sought was a mistrial. Defense counsel's precise words were "[w]ell, I feel that the only remedy this time is for a mistrial."

▇ Because no sanctions were imposed in this case, our task is to determine whether the State's discovery violation resulted in fundamental unfairness or substantively altered the outcome of the case. *See State v. Rhodes*, 591 S.W.2d 174 (Mo.App.1979); *State v. Couch*, 569 S.W.2d 789 (Mo.App. 1978). If either inquiry brings forth an affirmative answer, then the trial court's failure to impose a sanction would constitute an abuse of discretion. *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981).[10]

▇ Defendant argues that the evidence which the State failed to properly disclose tends to show his "consciousness of guilt"

and was therefore damaging to his defense. We fail to see the critical relevance that defendant's statements concerning his activities earlier that evening have on the question of whether he raped E.A. six nights earlier. The State did not present evidence impeaching the veracity of these statements. In fact, statements which defendant made to another police officer and which were presented at trial proved consistent with the statements he made to Komoroski. The critical evidence in this case was E.A.'s testimony and her positive identification of defendant as the man who raped her. Our examination of the record reveals no fundamental unfairness or prejudice resulting from the State's failure to fully comply with Rule 25.03. We also conclude that had the undisclosed evidence been made available to defendant before trial the outcome of the case would remain unchanged.

Defendant contends in his final two points on appeal that during the State's closing argument the prosecutor made both direct and indirect references to his decision not to testify at trial. Defendant says the following argument amounted to an indirect reference to his decision not to testify.

[E.A.] says he did it, this knife says he did it, his description and appearance says he did it, his profuse perspiration says he did it, his blood and his semen say that he did it, and there is no credible, believable evidence to the contrary.

▇ To constitute error an indirect reference to a defendant's decision not to testify must, when viewed in context, naturally and necessarily cause the jury to infer that the comment referred to the accused's failure to testify. *State v. Hill*, 678 S.W.2d 848, 850 (Mo.App.1984); *State v. Reed*, 583 S.W.2d 531, 534 (Mo.App.1979).

▇ Here, the defense had presented three alibi witnesses who each testified that defendant was elsewhere when E.A. was raped. Their testimony stood in direct

---

9. Rule 25.16 authorizes a trial court to issue appropriate orders or appropriate sanctions for a party's failure to comply with criminal discovery.

10. *Royal* was decided under prior Rule 25.45, which was the predecessor to Rule 25.16. The substance of the new rule does not differ in any respect from the prior rule.

contradiction to the evidence presented by the State. When viewed in context, it becomes apparent that the prosecutor's statement was directed at the credibility of the defense's alibi witnesses and not at defendant's failure to testify.

Finally, we address defendant's contention that the prosecutor's closing argument contained an impermissible direct and certain reference to his decision not to testify. Presented in full, the complained of comment took the following form:

> MS. DEAN: There is no lynch mob here or anywhere else. Times have changed in our criminal justice system. Today before a person may be convicted of any crime, whether it be shoplifting or rape, all of his rights must be safeguarded. The defendant's constitutional rights are specifically spelled out, and they are numerous, and everyone in this courtroom has a duty and a job, the defense attorney, the Judge, and even the prosecutor, myself, to see to it that his rights are not trampled upon. He may have a trial by a jury of his peers, and that's why we had 65 people in here, and we asked many, many questions and picked twelve of the people who said—thirteen people who said that they could be fair to both sides in this case. He has rights, all of which have been rehearsed to you, the right of the presumption of innocence, the right to remain silent, the right to bring in witnesses—

At the outset, it is important to note that these comments were made during the rebuttal portion of the State's closing argument and in retaliation to defendant's argument—that defendant was being given "lynch mob justice". The prosecutor pointed out that a criminal prosecution must be conducted in accord with our federal Constitution and that all defendants have certain rights and defendant's rights were scroupously honored by the State. One of the rights identified by the prosecutor was defendant's "right to remain silent."

We have held before that the critical factor in determining whether a comment on a defendant's decision not to testify is whether the comment contains the words "accused" and "testify" or their equivalent. *See State v. Frankoviglia*, 514 S.W.2d 536 (Mo.1974). *Cf. State v. Williams*, 673 S.W.2d 32, 36 n. 6 (Mo. banc 1984) (pointing out that indirect references which do not contain the words "accused" and "testify" can, nevertheless, constitute reversible error). Both of these words in their express form are absent from the comment made in present case. And though the presence or absence of key words such as "accused" and "testify" is helpful in determining whether a comment is a direct and certain reference, we, nevertheless, are not confined to any single talismanic formula in conducting our inquiry and we must take into consideration the unique facts of each particular case. With these principles in mind, we think that the comment in the present case falls short of a direct and certain reference to defendant's failure to testify. The record supports the conclusion that the comment was intended only to refute defendant's charge of "lynch mob justice".

Judgment affirmed.

HIGGINS, C.J., and BLACKMAR, DONNELLY, WELLIVER, RENDLEN, JJ., and SIMON, Special Judge, concur.

ROBERTSON, J., not sitting.