Michael **NUNN,** Plaintiff–Appellant,

v.

**STATE of Missouri,**
**Defendant–Respondent.**

No. 54732.

Missouri Court of Appeals,
Eastern District,
Division 4.

Aug. 15, 1989.

Motion For Rehearing and/or Transfer to Supreme Court Denied Sept. 20, 1989.

Application to Transfer Denied Nov. 14, 1989.

Daniel Lee Sayle, Asst. Public Defender, Clayton, for plaintiff-appellant.

William L. Webster, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

STEPHAN, Judge.

Michael Nunn appeals the judgment of the trial court denying his Rule 27.26 motion (repealed January 1, 1988), after an evidentiary hearing. Movant's conviction of first degree arson, first degree burglary, first degree assault, and two counts of third degree assault resulting in a sentence of sixty years imprisonment was affirmed on direct appeal by our per curiam order in *State v. Nunn*, 688 S.W.2d 377 (Mo.App. 1985). Movant's initial Rule 27.26 motion alleging ineffective assistance of trial counsel was filed *pro se* but later amended by counsel. After an evidentiary hearing, the motion court denied relief. We reverse.

Our review of a Rule 27.26 proceeding is limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.-26(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984). The court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Stokes v. State*, 688 S.W.2d 19, 21 (Mo.App. 1985). Movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. Rule 27.26(f); *Armour v. State*, 741 S.W.2d 683, 688 (Mo. App.1987).

In his first point, movant asserts that he was denied effective assistance of counsel in that his counsel testified at the trial and, when counsel's conduct was made an issue, counsel failed to move for a mistrial or to withdraw as counsel.

Prior to movant's trial on charges of arson, assault, and burglary, defense counsel decided to interview three of the state's witnesses over the telephone. Defense counsel tape-recorded portions of these conversations without the other person's knowledge.

About six months prior to defendant's trial, one of these witnesses, Ms. Yvette Blake, was subpoenaed to appear for a deposition at defense counsel's office. The state, however, received no notice of the subpoena or scheduled deposition nor was a copy of the subpoena filed with the court. Ms. Blake appeared at defense counsel's office; however, no deposition was taken.

At trial, Ms. Blake testified for the state. When defense counsel cross-examined her, he attempted to attack her credibility and establish her bias by showing that her testimony, if favorable to the state, would result in the state's more lenient disposition of certain criminal charges pending against her. She denied this. She further denied that she remembered talking to defense counsel on the telephone about the case, although she acknowledged she had appeared at his office.

Defense counsel attempted to refresh her recollection of the telephone conversation by mentioning the subpoena she had received from his office. After the prosecutor's objections, defense counsel abandoned his efforts to impeach her credibility. Instead, during defense counsel's presentation of his case-in-chief, he called himself as the first witness in order to counter the

testimony of Ms. Blake. Prior to testifying, he made no motion to withdraw as defense counsel. His brother, also an attorney, conducted the direct examination and defense counsel testified to his knowledge of the inconsistent statements by the state's witness, Ms. Blake.

The prosecutor vigorously interrogated defense counsel suggesting that defense counsel had served the subpoena on Yvette Blake for improper reasons. The prosecutor inquired whether defense counsel knew of the requirement not only that notice be given to all parties in an action when a deposition is to be taken, but also that attorneys avoid even the appearance of impropriety. The prosecutor further asked whether, in defense counsel's opinion, it was "legally, morally or ethically wrong" to call a state's witness and tape record their telephone conversation without disclosing they are being taped. After defense counsel finished testifying, he resumed his place at counsel's table and continued his presentation of defendant's case.

The last witness defense counsel called to testify was Timothy Murphy, an attorney and former law clerk in defense counsel's firm. He admitted being responsible for the handling of the subpoena. The sole purpose of his testimony was to absolve defense counsel of any wrongdoing with the subpoena episode.

During the state's closing argument, the prosecutor attacked defense counsel's credibility. He mentioned both the taping of telephone conversations and also the subpoena incident. He concluded his argument with the following:

> [Defense counsel] thinks it's an honorable thing to call witnesses up and not tell them they are being taped. Is it an honorable thing also to deliver a subpoenaed witness for deposition to a State's witness, have them come in to a law firm when there is no deposition taken, where there is no notice to the Prosecutor? If

we are going to talk about Yvette Blake's credibility, look at the people who are calling her a liar, and [defense counsel is] the primary one.

At the hearing on the motion, defense counsel testified he knew that if he took the stand his credibility, like that of any other witness, would be put in issue. Nevertheless, since he was the only person to hear the inconsistent statements from the state's witnesses, he believed his testimony was vital in the case. He discussed his course of action with movant and other members of his office.

After the evidentiary hearing, the motion court issued its findings of fact and conclusions of law and denied movant's allegation that his attorney was ineffective for failing to withdraw after testifying in movant's behalf. The court observed that defense counsel "wanted to testify on behalf of Movant at the trial in order to show that a State's witness had lied on the witness stand" and that "[t]he only way to show the witness' inconsistent statement was for [defense counsel] to testify." The court stated there was no reason for defense counsel to withdraw from the case prior to or during the trial since he could not have known that the state's witness would testify differently as to the facts she had related to defense counsel before trial. The court concluded that defense counsel's decision to call himself as a witness was one of "trial strategy" and did not reflect "errant judgment."

We disagree. Rule 4 of the Supreme Court of Missouri Rules, (since repealed) DR 5–101(B) provides that a lawyer shall not accept employment if he knows or it is obvious that he ought to be called as a witness, except if the testimony will relate solely to an uncontested matter, a matter of formality, the nature and value of legal services, or would work a substantial hardship on the client.[1] DR 5–102(A) requires a

---

1. Former Rule 4, Canons of Ethics, consisting of 4.01 to 4.47 was repealed by order of the Missouri Supreme Court dated November 6, 1970, and a new Rule 4, Code of Professional Responsibility, consisting of nine disciplinary rules and ethical considerations pertinent thereto, was adopted in lieu thereof, effective January 1, 1971.

The Rule 4 adopted effective January 1, 1971, was repealed and a new Rule 4, Rules of Professional Conduct, consisting of Rules 1.1 to 9.1, was adopted August 7, 1985, effective January 1,

lawyer and his firm to withdraw from the conduct of the trial if he learns or it is obvious that he ought to be called as a witness on behalf of his client except as allowed by the exceptions in DR 5–101(B).

Our Missouri Supreme Court analyzed the rationale behind DR 5–102 and 5–101 in *State v. Johnson,* 702 S.W.2d 65, 69 (Mo. banc 1985):

> The reasons underlying this rule are set forth in Ethical Consideration 5–9 of Missouri's Code of Professional Responsibility. First, a lawyer who serves as both trial counsel and witness is open to impeachment on the basis of an apparent interest in the outcome of the trial and is thus rendered less effective as a witness. Second, a lawyer who assumes both of those roles in a single case makes it more difficult for opposing counsel to conduct effective cross-examination and creates an awkward scenario in which one advocate must challenge the credibility of his legal adversary. Third, the lawyer who assumes the role of a witness must argue his own credibility, which may serve to weaken his credibility and effectiveness as an advocate. Finally, the two roles are said to be simply inconsistent. These reasons, though, have greatest purpose when the witness and advocate are one and the same.

Here, since each of these concerns surfaced during trial, we conclude that an actual conflict of interest existed between defense counsel and movant. At trial, the state first identified defense counsel's obvious interest in the outcome of the case by noting that he was not an appointed counsel but, rather, had been retained by defendant. Second, through its intimation of impropriety in counsel's tape-recording telephone conversations without the other side's knowledge and issuing a subpoena for an improper purpose, the state made defense counsel's credibility an issue for the jury. Third, defense counsel called a witness for the sole purpose of rehabilitating defense counsel's own credibility. Fi-

nally, defense counsel's appearance in the inconsistent roles of advocate and witness may have undermined the jury's ability to decide the facts and its perception of movant.

Although the courts of Missouri have not addressed the particular situation in which a defense counsel testifies on behalf of his client and then continues with the case, a comparable scenario developed in *State v. Hayes,* 473 S.W.2d 688 (Mo.1971). In *Hayes,* the prosecuting attorney appeared as a witness for the state and then continued in the case as the prosecutor. Our Missouri Supreme Court echoed *Tomlin v. State,* 81 Nev. 620, 407 P.2d 1020, 1022 (1965), stating as follows:

> [T]he right of a prosecuting attorney to testify in a criminal case 'is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case. Even then, his functions as a prosecuting attorney and as a witness should be disassociated. If he is aware, prior to trial, that he will be a necessary witness, or if he discovers this fact in the course of the trial, he should withdraw....'

473 S.W.2d at 691–92.

The court held that "the prosecuting attorney occupied conflicting positions as a witness for the State and as a prosecutor ... and the natural tendency in such a case is for defendant to question the fairness of a trial when the prosecutor becomes a witness for the state." *Id.* at 692.

In the instant case, when defense counsel decided that he should testify in his client's behalf, he was under a duty to withdraw from the case. He should not have been surprised that the state inquired about the subpoena and the taping of the telephone calls. Defense counsel's disregard for EC 5–9 and DR 5–102(A) thus put him in a situation where his continued representation jeopardized movant's position during the criminal trial. For example, counsel's act in calling the last defense witness, his

1986. Movant's trial was August 16, 1983, when the Code of Professional Responsibility was in effect. The subject matter of DR 5–101(B) and DR 5–102(A) under Rule 4 of the Code of Profes-

sional Responsibility is currently covered under Rules 1.7 and 3.7 of the current Rules of Professional Conduct.

former law clerk, was solely to refute the allegations of counsel's involvement with the subpoena. The only testimony elicited from the witness was directed at disassociating defense counsel from the entire subpoena episode.

Counsel was caught between the obligation to do his best for movant and the need to justify his own conduct as legal and ethical. An accused is entitled to representation which is uncluttered by counsel's efforts to vindicate his own conduct. A conflict of interest resulting in ineffective assistance of counsel may arise from an interest adverse to the accused or an interest simply personal to the attorney. *Maddox v. State*, 715 S.W.2d 10, 11 (Mo.App. 1986); *Douglas v. State*, 630 S.W.2d 162, 164 (Mo.App.1982).

The only issue which should have been before the jury was defendant's conduct, not that of his attorney. Counsel's actions which injected his credibility as an issue during movant's trial undoubtedly adversely affected his client's interests. Counsel's prior conduct was completely irrelevant to movant's case and could only detract from his defense. That the jury unintentionally imputed the alleged improprieties of defense counsel to his client is a very real possibility. Counsel could have avoided this possibility by adhering to the ethical prohibitions.

We do not dispute counsel's right to call himself as a witness; clearly, an attorney may be a competent witness. *Cf. Hayes*, 473 S.W.2d at 691. Trial strategy, however, only applies to the decision to call a witness; it does not extend to the decision to remain as counsel. Such a situation produces a conflict of interest, and to sweep it under the rug of trial strategy is a mischaracterization. Furthermore, we find no "peculiar and unusual circumstances" as referred to in *Hayes* which would justify the need to remain as counsel.

We conclude that movant was deprived of his Sixth Amendment right to effective assistance of counsel, since movant has made the necessary showing of an actual conflict of interest adversely affecting his

attorney's performance. The court erred in denying movant relief under Rule 27.26.

We do not address appellant's remaining points as it is unlikely they will arise on retrial. The cause is reversed and remanded to the trial court with directions to vacate the sentence and judgment and for further proceedings thereon.

SMITH, P.J., and SATZ, J., concur.