**STATE of Missouri ex rel., Eugene Michael FLEER, Relator,**

v.

**The Honorable Frank CONLEY, Special Judge of the Circuit Court of Jefferson County, Missouri, Division I, Respondent.**

No. 59057.

Missouri Court of Appeals,
Eastern District,
Writ Division One.

April 23, 1991.

Marsha Brady, Hillsboro, for relator.

John S. Appelbaum, Asst. Pros. Atty., Hillsboro, for respondent.

SIMON, Judge.

Relator filed his petition for writ of prohibition in response to respondent's order removing his defense counsel. We issued a preliminary order in prohibition. We now make our preliminary order permanent and remand this case for further proceedings. The facts are as follows.

Fifteen-year-old Stacie Price and three-year-old Tyler Winzen were found murdered in an apartment in Jefferson County on August 7, 1986. Relator was charged on February 7, 1989 with two counts of first degree murder in connection with the deaths of Price and Winzen. On February 14, 1989, Clinton Almond and Marsha Brady of Almond, Williams & Brady, P.C., entered their appearance as relator's defense counsel.

On March 23, 1989, George "Bud" Taylor informed the Jefferson County Sheriff's Department that he witnessed and heard relator confessing to the murders in the fall of 1986. On June 14, 1989, the state filed an information charging relator with the murders of Price and Winzen and endorsing Taylor as a witness for the state. At that time, Taylor was serving concurrent twenty-year sentences for first degree robbery and armed criminal action, for which he had been convicted in November of 1986. Clinton Almond, relator's co-defense counsel, was Taylor's defense counsel in his 1986 robbery trial.

While Almond was representing Taylor in 1986 on the robbery and armed criminal action charges, Taylor, without Almond's knowledge, was an informant for federal and state authorities pursuant to an investigation of area massage parlors, and other suspected criminal activities. Taylor's efforts included covert attempts to obtain information against Almond, ostensibly in order to "make a deal" for himself on his robbery charge. Taylor was "wired" during meetings with Almond, and several of their conversations were recorded without Almond's knowledge or consent.

Relator's defense counsel and the assistant prosecuting attorney met with Taylor in November of 1989. Taylor indicated at that time that he would not cooperate with the state and refused to be deposed. Taylor has not been deposed by either defense counsel or the prosecuting attorney's office.

Pursuant to discovery in relator's case, on January 12, 1990 the state filed a written disclosure document, containing Taylor's explanation for not coming forward sooner with information about the purported confession. Taylor claimed that prior to his trial in 1986, he told Almond about the confession, and that Almond advised him not to disclose the information and refused to use it to plea bargain in Taylor's case. We note that neither Taylor's *pro se* Rule 29.15 motion, nor his amended motion, charging Almond with ineffective assistance of counsel arising from his 1986 convictions, made any reference to Almond's supposedly refusing to use Taylor's information regarding relator's alleged confession to obtain a plea bargain in Taylor's case. Almond has consistently denied that Taylor ever told him about relator's confession or that he advised Taylor to withhold such information.

Relator's original trial date, January 22, 1990, was continued because summonses failed to reach the prospective jurors. Relator's first trial began on May 15, 1990. During voir dire, Almond stated to the panel he (Almond) would testify as a defense witness if the state's evidence warranted such. Before that happened, however, the Honorable John L. Anderson declared a mistrial due to impermissible testimony by a state witness other than Taylor. Judge Anderson then transferred the case to the Honorable Timothy J. Patterson.

Upon the state's motion Judge Patterson appointed Donald Wolff as independent counsel on June 13, 1990. The court charged Wolff with (1) reviewing the "Canons of Professional Responsibility," in particular Rule 3.7; (2) consulting with and advising relator of any problems which may arise under "that Canon"; (3) determining whether relator wished to waive any potential conflict of interest and continue with his present defense counsel; (4) advising the court as to whether such a waiver can be made under the Code of

Professional Responsibility; (5) reviewing the procedural history of relator's case to make a recommendation as to whether there is a substantial hardship which could allow relator to continue to be represented by his present defense counsel; and (6) make any further suggestions which would "serve the ends of justice."

Almond chose not to meet with Wolff. Marsha Brady, relator's co-defense counsel, met with Wolff and provided background information and documents. She vociferously objected to any meeting between relator and Wolff, and no such meeting occurred. After meeting with both the prosecutor and Brady, Wolff submitted his report to the trial court.

Wolff's report recommended that a hearing be held, in open court and on the record, so that he could advise relator in the presence of the court and all counsel, of the problems concerning the continued representation by relator's chosen defense counsel. He also recommended that relator be given an opportunity at the hearing to waive any possible conflict of interest and ineffective assistance of counsel claim.

After reviewing Rule 3.7 of the Code of Professional Responsibility, other relevant precedents, and the procedural history of relator's case, Wolff concluded that "it is clear from review of the record that a substantial hardship would exist in this case if the continued representation by [relator's defense counsel] were to be terminated." He also concluded that the ultimate decision as to whether relator should be permitted to continue with his chosen defense counsel should be left to the discretion of the trial court.

A hearing was held on August 16, 1990, before respondent, who was appointed by our supreme court that morning to hear the case. At the hearing, the state presented its grounds for requesting that relator's defense counsel be removed. Brady, relator's co-defense counsel, was given an opportunity to respond to the state's position. The court also requested that Wolff make any additional comments. Wolff then advised relator at length of the problems which are presented by defense counsel's continuing to represent him. At the close of Wolff's comments to relator, relator was given an opportunity to review the written report submitted to the court and consult privately with Wolff.

At the close of the hearing, relator was sworn and questioned extensively by Wolff, on behalf of the court, about his understanding of the problems, and his desire to waive any possible conflict of interest and continue to be represented by Almond and Brady. At this point in the hearing the following dialogue took place between Wolff and relator:

Q. ... [I]t is your desire to waive the conflict of interest issue, is it not?

A. Yes, sir, it is.

Q. That is, it is your desire having been advised of the potential problems, it is your desire to ask this Court not to disqualify your retained counsel and to permit you to waive the conflict of interest problem and have Mr. Almond and Ms. Brady continue as your retained counsel of choice in this capital murder case; is that correct?

A. Yes, sir, that's correct.

Q. And in making that decision you have been advised by me that there is a potential problem and a potential, if not real conflict of interest between your lawyer's duty to you and his potential interest in protecting himself and in his confusion perhaps of roles as an attorney as well as the potential appearance of your counsel a witness in the case in which he both represents you and will appear to testify himself; isn't that correct?

A. Yes, sir, that's correct.

Q. And knowing of the potential problems, you are still willing to waive that conflict of interest?

A. Yes, I am.

\*   \*   \*   \*   \*   \*

Q. I have advised you that in the event the Court sees fit to accept your waiver that you may be precluded from later contending in a post-trial motion that you were entitled to a fair trial without cluttered representation which

may be complicated because of your trial attorney's appearing both as a witness and as an advocate for you; isn't that correct?

A. Yes, sir, that's correct.

On September 19, 1990, respondent issued an order, effective October 3, 1990, removing Almond and Brady as defense counsel in relator's case and indicated that another attorney would be appointed to represent relator. In the memorandum accompanying the order respondent focused on two questions: can relator waive a conflict of interest, and can his defense counsel continue to represent him knowing Almond may be required to testify in the case. Respondent assumed in the memorandum that Taylor will appear as a prosecution witness, and that Almond will both testify as a defense witness to rebut Taylor's expected testimony, and continue as relator's defense counsel.

Relator filed his petition for writ of prohibition on the same day as respondent's order became effective, October 3, 1990. We issued our preliminary order in prohibition the following day. Arguments were held in this court on January 7, 1991. At that time we were presented with a letter written by Taylor on December 17, 1990, addressed to the Jefferson County Prosecutor's Office. Taylor's letter indicated that he no longer intended to assist the prosecuting attorney's office in any ongoing trials because, "[the prosecuting attorney's office does] not have my best interest at heart". Taylor specifically stated that he was no longer willing to testify in the "Fleer Case". Apparently, Taylor's refusal to testify in relator's trial is the result of the state's unwillingness to grant him certain relief he desires in exchange for his testimony. We note this letter was not before respondent when the October 3 order was entered removing Almond and Brady as defense counsel.

Relator argues respondent exceeded his jurisdiction in removing defense counsel because a trial court may not override a defendant's knowing and intelligent waiver of the right to conflict-free assistance of counsel, thereby violating his constitutional rights guaranteed by the Sixth Amendment.

■ The question of an effective waiver of a federal constitutional right is governed by federal standards. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969). We therefore look to federal precedent.

A defendant is afforded a Sixth Amendment right to effective assistance of counsel, *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674, 691 (1984), which has been interpreted in the past to include counsel free of actual conflicts of interest that adversely impact performance. *See United States v. Peeler,* 738 F.2d 246, 250[5] (8th Cir.1984), *cert. denied, Peeler v. United States,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984); *State v. Chandler,* 698 S.W.2d 844 (Mo. banc 1985). The Sixth Amendment also allows a defendant to be represented by counsel of his choice, but this right is not absolute. *United States v. DeLuna,* 584 F.Supp. 139, 142[3] (W.D.Mo.1984). "[A] facet of the right to counsel of choice is the defendant's ability to waive his right to the assistance of counsel unhindered by a conflict of interest, provided that waiver is knowing and intelligent." *Id., citing United States v. Agosto,* 675 F.2d 965, 969–70 (8th Cir.1982), *cert. denied, Gustafson v. United States,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982).

■ In determining the existence of a knowing and intelligent waiver, we look to the particular facts and circumstances of each case. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378, 385 (1981); *United States v. Friedman,* 854 F.2d 535, 574 (2nd Cir. 1988), *cert. denied, Friedman v. United States,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). Although the procedure enunciated in *United States v. Lawriw,* 568 F.2d 98 (8th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978), is not required in a state court proceeding, *Henderson v. Smith,* 903 F.2d 534, 537 (8th Cir.1990), *cert. denied, Henderson v. Goeke,* — U.S. ——, 111 S.Ct. 529, 112 L.Ed.2d 539 (1990), we must

nonetheless carefully review the record for strong evidence of a knowing, intelligent, voluntary waiver of the right to conflict-free counsel.

Our inquiry does not end, however, upon a finding of such a waiver. "In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility." *United States v. Cunningham*, 672 F.2d 1064, 1070[3] (2nd Cir.1982), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1982); *DeLuna*, 584 F.Supp. at 144. The ethical standard brought into play in this case is Supreme Court Rule 4, Rule 3.7:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Respondent's memorandum accompanying his order reviewed the underlying facts in the case and the events occurring since Wolff's appointment as independent counsel, before setting out what respondent felt the two "potential problems" were. The first problem respondent noted was whether there was a conflict, and if so, can relator waive it.

■ It is clear that an actual conflict exists if Taylor testifies for the state, because Almond would then be placed in the position of testifying as a defense witness. *See Nunn v. State*, 778 S.W.2d 707, 710 (Mo.App.1989). It is equally clear relator may waive his right to effective, conflict-free counsel, providing his waiver is knowing, intelligent, and voluntary. *See supra.*

Respondent's second delineated problem was whether Almond and Brady could continue as defense counsel "knowing that it may become crucial to [relator's] case that attorney Almond testify[.]" In answering this question in the negative, respondent relied upon *Nunn* and *State v. Johnson*, 702 S.W.2d 65 (Mo. banc 1985). In *Nunn*, defense counsel surreptitiously taped telephone conversations with a state witness. At trial the witness denied the conversations took place. After failed attempts to impeach the witness, counsel chose to rebut her testimony by taking the stand during his client's case-in-chief. During cross-examination the prosecutor questioned counsel on his motives in serving a deposition subpoena on the witness without giving notice to the state. Counsel called his former law clerk who testified that he, not counsel, was responsible for the subpoena, absolving counsel of any wrongdoing.

The defendant in *Nunn* was not informed of counsel's conflict of interest and did not have the opportunity to object or waive his rights. This court found counsel's actions violative of DR 5–101(B) and 5–102(A) (repealed January 1, 1986), the predecessors of Rule 3.7, requiring counsel to withdraw if counsel will be a witness on his client's behalf, absent the exceptions in DR 5–101(B).

Relator cites *Johnson* for the rationale underlying DR 5–101(B) and 5–102:

> The reasons underlying this rule are set forth in Ethical Consideration 5–9 of Missouri's Code of Professional Responsibility. First, a lawyer who serves as both trial counsel and witness is open to impeachment on the basis of an apparent interest in the outcome of the trial and is thus rendered less effective as a witness. Second, a lawyer who assumes both of these roles in a single case makes it more difficult for opposing counsel to conduct effective cross-examination and creates an awkward scenario in which one advocate must challenge the credibility of his legal adversary. Third, the lawyer who assumes the role of a witness must argue his own credibility, which may serve to weaken his credibility and effectiveness as an advocate. Finally, the two roles are said to be simply inconsistent. These reasons [ ...] have greatest purpose when the witness and advocate are one and the same.

*Johnson,* 702 S.W.2d at 69. We now apply these principles to our case.

█ Here, there is not enough evidence in the record to show that respondent has adequately balanced all considerations, as required by *Cunningham,* 672 F.2d at 1070–75. For example, there appears to be real doubt whether Taylor will in fact testify. *Cf. id.* at 1074–75. The record reveals that as early as November of 1989 Taylor unequivocally refused to cooperate, and the December 17, 1990 letter to the prosecutor reinforces Taylor's intentions.

Respondent has likewise not addressed the issue of whether removing Almond and Brady will work a substantial hardship on relator, as respondent is required to do under Rule 3.7(a)(3). There is evidence to suggest the removal will be detrimental, such as the fact relator has already paid for the legal services desired and has no more money, counsel is prepared to go to trial and has been since January 1990, and relator has been incarcerated since his arrest and appointment of new counsel will cause a lengthy delay due to time needed for preparation.

The question of whether there are confidential attorney-client communications between Almond and Taylor subject to protection is one we leave for another day. We note that problems exist due to: (1) Taylor's wearing a listening device to meetings with Almond (thereby allowing third persons to hear confidential communications), and (2) Taylor's filing a Rule 29.15 motion and its interrelationship with Rule 4, Rule 1.6(b)(2), which states that an attorney may divulge a confidence if necessary to establish a claim or defense on the attorney's behalf in a controversy between the attorney and client.

We therefore make our preliminary writ in prohibition permanent, and remand for proceedings consistent with this opinion.

PUDLOWSKI and KAROHL, JJ., concur.