**MAIN EVENTS PRODUCTIONS, LLC.
and New Jersey Sports Productions,
Inc., Plaintiffs,**

v.

**Jeff LACY, John Does (fictitious entities) and Richard Roes (fictitious entities), Defendants.**

**Civ. No. 02–3028(DRD).**

United States District Court,
D. New Jersey.

Sept. 12, 2002.

---

Laurence B. Orloff, Esq., Craig A. Ollenschleger, Esq., Orloff, Lowenbach, Stifelman & Siegel, P.A., Roseland, NJ, Patrick English, Esq., Dines & English, Clifton, NJ, for Plaintiffs Main Events Productions, L.L.C. and New Jersey Sports Productions, Inc.

David A. Picon, Esq., Proskauer Rose L.L.P., Newark, NJ, Judd Burstein, Esq., Judd Burstein, P.C., New York City, for Defendant Jeff Lacy.

## OPINION

DEBEVOISE, Senior District Judge.

This matter comes before the court on plaintiffs', Main Events Productions, LLC. and New Jersey Sports Productions, Inc. appeal (collectively hereinafter referred to as "Main Events") from Magistrate Judge Hedges's order disqualifying Patrick English, Esq. from participating as counsel for Main Events. For the reasons set forth below, Magistrate Judge Hedges's order will be reversed.

## STATEMENT OF FACTS

This action arises out of a Promotion Agreement (the "Agreement") between Main Events, a boxing promotion company, and Jeff Lacy, ("Lacy"), a professional boxer and former Olympian. The present controversy arises out of Lacy's termination of a promotion agreement entered into in November or December 2000 between himself, Main Events, and Lacy's manager, Shelly Finkel. The right to terminate is located in paragraph 11 of the Agreement. Patrick English, Esq., Main Events's general counsel, negotiated paragraph 11 of the Agreement with Lacy's attorney, Jim Wilkes, Esq. Mr. English and Mr. Wilkes were the only persons directly involved in the negotiation of paragraph 11.

Invoking paragraph 11 of the Agreement, Lacy attempted to terminate the Agreement in June 2002. After Lacy left Main Events, Mr. English was involved with communications with Lacy's counsel regarding the propriety of Lacy's termination. Plaintiffs commenced this action against Lacy on or about June 24, 2002 in the New Jersey Superior Court, Bergen County, Chancery Division, seeking *inter alia* a temporary restraining order and preliminary injunction. Lacy removed the action to this court on June 25, 2002. In a letter dated July 3, 2002, Lacy first raised the issue of Mr. English's disqualification.[1] On July 11, 2002, Mr. English indicated he would be involving Laurence Orloff, Esq. in the proceedings. On July 15, 2002, Mr. Orloff participated by phone on a hearing on the plaintiffs request for a temporary restraining order, which was denied. On

---

1. Any claim that Lacy has delayed in seeking Mr. English's disqualification is without merit.

that day, the court also scheduled an evidentiary hearing on the application for a preliminary injunction for August 20 and 21, 2002, and urged the parties to take all necessary discovery in anticipation of the hearing.[2] At some point after July 15, 2002, it appears that the parties tentatively agreed to conduct depositions the week of August 5, 2002. However, after the depositions where scheduled and during the week of July 22, 2002, Lacy informed Main Events that he intended to seek the disqualification of Mr. English from engaging in pre-trial representation of Main Events. By letter dated July 29, 2002, Lacy again raised the disqualification issue of Mr. English, and the matter was immediately referred to Magistrate Judge Hedges. By letter dated July 30, 2002, Mr. Orloff and Mr. English opposed the disqualification. On July 31, 2002, Magistrate Judge Hedges conducted a telephone conference with the parties, during which he disqualified Mr. English from representing Main Events in any phase of this action. In accordance with his ruling during the July 31, 2002 telephone conference, Magistrate Judge Hedges issued a letter order dated August 1, 2002, setting forth the basis of his July 31, 2002 oral ruling.

The evidentiary hearing on the application for the preliminary injunction was held on August 22 and 23, 2002, and Mr. English testified as to the negotiations surrounding paragraph 11. Mr. Orloff conducted the proceedings on behalf of Main Events. An order staying Magistrate Judge Hedges's order pending this appeal was issued on September 3, 2002, and entered on September 4, 2002. The request for a preliminary injunction was denied by an order and accompanying opinion dated September 4, 2002.

### STANDARD OF REVIEW

A district court reviewing a magistrate judge's order on a non-dispositive motion may modify or vacate the order only if the ruling was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(a); Loc. R. 72.1(c)(1); *see Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 & n. 5 (3d Cir.1986). "A finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J.1990), quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J. 1998).

### DISCUSSION

■ This appeal centers on the interpretation and application of Rule of Professional Conduct (RPC) 3.7(a) which states:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Magistrate Judge Hedges held, and plaintiffs concede, that Mr. English is a necessary witness. As a result, Magistrate Judge Hedges held that Mr. English should be disqualified from participating

---

**2.** The hearing was ultimately moved to August 22 and 23, 2002.

as counsel for plaintiffs, and adopted Magistrate Rosen's interpretation of RPC 3.7 in *Freeman v. Vicchiarelli*, 827 F.Supp. 300 (D.N.J.1993).

The analysis of RPC 3.7 in *Freeman* is predicated on various New Jersey cases, as well as opinions of the New Jersey Advisory Committee on Ethics, which relied on older versions of the advocate witness rule found in the Disciplinary Rules of the Code of Professional Responsibility. Local Civ. R. 103.1(a) provides that "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." On September 10, 1984, The New Jersey Supreme Court adopted an amended version of the American Bar Association Rules on Professional Conduct which replaced the Disciplinary Rules of the Code of Professional Responsibility.

RPC 3.7(a) is a prohibition only against acting as an "advocate at a trial." Unlike RPC 3.7, the plain language of DR 5–101(B) [3], DR 5–102(A) and DR 5–102(B) [4] clearly provided that an attorney could not accept employment where he could be a witness, or must immediately withdraw upon learning or believing he would be a witness for his client or another party. The conclusion drawn in *Freeman* that RPC 3.7 applies to all pre-trial activity is at odds with the clear language of RPC 3.7. While there is no clear authority from the New Jersey Supreme Court regarding this issue, a number of other courts interpreting RPC 3.7 have concluded that an attorney who will testify at trial need not be disqualified from participating in pre-trial matters. *Gordon v. Bechtel, Int'l*, No. 01–132, 2001 WL 1727251, at *5 (Dist.V.I. Dec. 28, 2001)("In any event, the rule only applies to trial and the attorney may continue to represent the client up to trial"); *George v. Wausau Ins. Co.*, No. 99–6130, 2000 WL 276915, at *2–3 (E.D.Pa. Mar. 13, 2000); *Pyne v. Procacci Bros. Sales Corp.*, No. 96–7314, 1997 WL 634370, at *1–2 (E.D.Pa. Oct. 8, 1997); *Lebovic v. Nigro*, No. 96–319, 1997 WL 83735, at *1–2 (E.D.Pa. Feb. 26, 1997); *Rounick v. Fire-*

---

**3.** DR 5–101(B) provided that:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or believes that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment, and he or a lawyer in his firm may testify:

(1) if the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

**4.** DR 5–102 provided that:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or believes that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue in the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If after undertaking employment in contemplated or pending litigation, a lawyer learns or believes that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

man's Fund Ins. Co., No. 95–7086, 1996 WL 269495, at *1 (E.D.Pa. May 20, 1996); *Caplan v. Braverman,* 876 F.Supp. 710, 711 (E.D.Pa.1995); *Culebras Enter. v. Rivera–Rios,* 846 F.2d 94 (1st Cir.1988). *But see Stewart v. Bank of America, N.A.,* 203 F.R.D. 585 (M.D.Ga.2001); *World Youth Day v. Famous Artists Merch. Exch.,* 866 F.Supp. 1297, 1302 (D.Colo.1994); *cf. Massachusetts School of Law v. American Bar Association,* 872 F.Supp. 1346, 1380–1381, *aff'd,* 107 F.3d 1026, 1044 (3d Cir. 1997).[5] In light of the clear language of the Rule, Mr. English should not have been disqualified from participating in pre-trial matters. This construction of RPC 3.7 not only is in accord with the plain language of the Rule, it also is consistent with its intent. The Rule is designed to prevent a situation in which at trial a lawyer acts as an attorney and as a witness, creating the danger that the fact finder (particularly if it is a jury) may confuse what is testimony and what is argument, and otherwise creating an unseemly appearance at trial. Limiting the disqualification to advocacy at trial achieves these objectives and at the same time respects a client's right to be represented generally by an attorney of his choice. The present decision does not address the intermediate situation where an attorney must testify not at trial but at a pre-trial evidentiary hearing, such as the preliminary injunction hearing in the instant case. The better rule would probably be to treat the hearing as if it were a trial and, as Main Events did in this case, retain other counsel to represent the client for the purpose of the hearing.

As enumerated above, RPC 3.7 provides three exceptions to the rule barring an attorney from serving dual roles at trial: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. RPC 3.7. While Main Events does not contest that Mr. English is a necessary witness, they seek to avail themselves of the "substantial hardship" exception to the rule for pre-trial proceedings. In light of the conclusion that RPC 3.7 does not apply to pre-trial proceedings, an analysis of Main Events's claim of substantial hardship is unnecessary.

■ Finally, Lacy further contends that Mr. English should be disqualified pursuant to RPC 1.7(b) which states in pertinent part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after a full disclosure of the circumstances and consultation with the client.

Lacy submits that Mr. English's role in the negotiations at the center of this dispute has given rise to a personal interest in this litigation. Lacy describes the personal interest in the litigation as an interest in the justification of his actions during negotiations and the preservation of his present and future employment as counsel for Main Events. Further, Lacy submits that his personal interest in the litigation conflicts with his interests as trustee for the minor beneficiaries of the trust that owns Main Events. Lacy argues that a

---

**5.** Even under the old rule, the Advisory Committee on Professional Ethics, was not convinced that DR 5–102(A) required immediate withdrawal. N.J. Advisory Committee on Professional Ethics, Op. 421, 103 N.J.L.J. 195 (Mar. 1, 1979).

conflict is created because his status as a trustee enables Mr. English to appoint the counsel to best serve Main Events interests on the one hand, and has a personal interest in representing Main Events on the other hand.

Lacy has failed to establish an actual conflict of interest exists requiring Mr. English to be disqualified pursuant to RPC 1.7(b). A conflict of interest which requires disqualification does not exist merely because an attorney may be personally interested in the outcome of litigation.[6] "One need not tax the mind too strenuously to conjure up an entire assortment of instances in which an attorney's self-interest may theoretically conflict with the interests of his client." *Essex Cty. Jail Annex Inmates v. Treffinger,* 18 F.Supp.2d 418, 431–432 (D.N.J.1998). This type of personal interest or "self interest", however, is not the type of interest which necessarily gives rise to a conflict of interest. *Essex Cty.,* 18 F.Supp.2d at 432. Insofar as Mr. English serves as the general counsel for Main Events and is personally motivated to maintain his position, and also serves as a trustee for the minor beneficiaries, Lacy has not established that this dual role creates an actual conflict warranting disqualification pursuant to RPC 1.7(b).

Finally, Lacy suggests that the appeal may also be affirmed on the ground that Mr. English's representation of plaintiffs creates "an appearance of impropriety." Where no actual conflict exists, an attorney may be disqualified from a case if an "appearance of impropriety" exists as a result of multiple representation. RPC 1.7(c)(2). It does not appear from the plain language of the rule that the appearance of impropriety rule would even apply to this situation. The language of the Rule itself suggests that the appearance of impropriety rule only applies to situations where an attorney undertakes multiple representation of clients and an actual conflict does not exist. Assuming that the appearance of impropriety doctrine may be applied to a situation where there is no actual conflict between the lawyer's self interest and the client's interests, it cannot be said that Mr. English's representation "poses a risk of disservice to either the public interest or the interest of one of the clients." RPC 1.7(c)(2).[7]

### CONCLUSION

For the reasons set forth herein, the Order of Magistrate Judge Hedges dated August 1, 2002 will be reversed. An appropriate order will enter.

---

**6.** In support of his position, Lacy relies on *Nunn v. State,* 778 S.W.2d 707 (Mo.Ct.App. 1989), a criminal matter. *Nunn* is hardly instructive.

**7.** The Commission on the Rules of Judicial Conduct, chaired by Justice Pollack, has recently recommended that the appearance of impropriety rule should be eliminated. *Commission on the Rules of Professional Conduct Notice of Public Hearing and Preliminary Report,* 167 N.J.L.J. 1341 (Mar. 25, 2002).