STATE of Missouri, ex rel. Shirley J. WALLACE, Relator,

v.

The Honorable David MUNTON, Judge of the Circuit Court, 28th Judicial Circuit, Associate Division, on Assignment in Christian County, Respondent.

No. 22288.

Missouri Court of Appeals, Southern District, Division Two.

March 30, 1999.

Robert W. Stillings, Springfield, for Relator.

William C. Love, Harrision, Tucker & Hyde, Springfield, for Respondent.

## PER CURIAM.

This original proceeding in prohibition arises from an underlying petition for damages which, in turn, arose from a judgment for dissolution of marriage. The Circuit Court of Christian County dissolved the marriage of John H. Snow ("Mr.Snow") and Shirley J. Snow, now Shirley J. Wallace ("Ms.Wallace"), on March 18, 1996. Pursuant to that decree, Mr. Snow was to receive certain items of property in the possession of Ms. Wallace and the parties were to "coordinate and cooperate" so that all property awarded to Mr. Snow would be removed from the premises of Ms. Wallace within thirty (30) days.

On July 3, 1996, Mr. Snow filed a petition against Ms. Wallace seeking actual and punitive damages in which he alleged that she had refused to coordinate and cooperate with him in removing his property from the real estate awarded to her in the dissolution, arbitrarily moved a portion of such property to a storage facility, and maliciously destroyed and/or appropriated property to which he was entitled. Ms. Wallace filed a two-count counterclaim alleging, among other things, that Mr. Snow had filed the lawsuit for improper purposes and had committed miscellaneous trespasses on her land. Mr. Snow then filed claims against Ms. Wallace based on libel and slander.

On March 16, 1998, Mr. Snow filed a motion to disqualify opposing counsel based on Rule 4–3.7 [1] in which he alleged that Ms.

---

1. Rule 4–3.7, Missouri Rules Governing the Missouri Bar and Judiciary (1998), provides, in pertinent part:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

Wallace's attorney, Robert W. Stillings ("Attorney Stillings"), was likely to be a necessary witness in the case. Specifically, he contended that it was likely that it would be necessary for Attorney Stillings to testify about "the removal by [Mr. Snow] of his property from the real estate owned by [Ms. Wallace] which is the essence of [Mr. Snow's] claim." Attached to his motion was a letter written by Mr. Snow's former attorney, Warren S. Stafford ("Attorney Stafford"),[2] to Attorney Stillings. The letter, dated April 19, 1996, stated that Attorney Stillings had ignored attempts to arrange for the removal of Mr. Snow's property in order to contend that the 30-day limit to remove the property had expired. Ms. Wallace filed a response to the motion alleging that Attorney Stillings was not a necessary witness, there was no indication that the subject matter of Attorney Stillings' testimony would be about anything other than an uncontested issue, and disqualification of Attorney Stillings would work a substantial hardship on her.

Ms. Wallace then filed a motion to disqualify Mr. Snow's attorney, Kent O. Hyde ("Attorney Hyde"), claiming that he, too, was a necessary witness. On April 20, 1998, the trial court granted both motions to disqualify, thereby disqualifying Attorney Stillings as well as Attorney Hyde.[3] The court's order also stated:

> The Court on the motions of [d]isqualification specifically finds that if either attorney is determined not to be disqualified by a higher court, then this Court has made the same mistaken determination as to the other attorney and that neither should then be disqualified. Court specifically finds that the disqualification of the lawyers would not work a substantial hardship to either client and that the attorneys are likely to be necessary witnesses and that the testimony relates to contested issues

and is not related to the nature and value of legal services rendered in the case.

Ms. Wallace filed a petition for writ of prohibition which resulted in our entry of a preliminary order in prohibition directing the trial court to refrain from further action to enforce the order disqualifying her attorney.

■ Ms. Wallace first contends that the trial court exceeded its jurisdiction in sustaining the motion to disqualify her attorney because a trial court has no authority to enforce Rule 4–3.7. Rather, she argues that the power to enforce Rule 4–3.7 resides only in the ethics advisory committee, circuit bar committee, chief disciplinary counsel and the Supreme Court of Missouri.

The parties have not referred us to any Missouri case directly addressing the issue of whether a trial court has the authority to enforce Rule 4–3.7. Our research has likewise revealed none.

Rule 4, entitled "Rules of Professional Conduct," includes a preliminary section entitled "Scope." Included in that section are, *inter alia*, the following statements:

> . . . Compliance with the Rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings.
>
> . . . .
>
> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process.
>
> . . . .
>
> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidelines to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not de-

---

**2.** At the time Mr. Snow filed his petition, he was represented by Attorney Stafford who was the same attorney that represented Mr. Snow in the underlying dissolution of marriage and communicated with Ms. Wallace's attorney in trying to "cooperate and coordinate" so that Mr. Snow could obtain his property within 30 days of the judgment. Attorney Stafford allegedly withdrew

as counsel because he believed that he, like Attorney Stillings, was a necessary witness to the case. Thereafter Kent O. Hyde entered his appearance as counsel on behalf of Mr. Snow.

**3.** Mr. Snow has not attacked the order disqualifying Attorney Hyde.

signed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

These statements from the "Scope" section leave the impression that enforcement of the "Rules of Professional Conduct" may be limited to self-assessment by the involved attorney, or ultimately, enforcement through formal disciplinary proceedings.

Provisions of Rule 4–3.7, however, appear to contemplate a preliminary determination of whether an attorney should act as an advocate at a trial. For instance, Rule 4–3.7(a)(3) contains a prohibition against an attorney acting as an advocate at a trial in which he or she is "likely to be a necessary witness," unless "disqualification of the lawyer would work substantial hardship on the client." The Comment to Rule 4–3.7 provides, *inter alia:*

> Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

> The opposing party has proper *objection* where the combination of roles may prejudice that party's rights in the litigation.
> . . . .

> . . . [P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer *should be disqualified* due regard must be given to

the effect of disqualification on the lawyer's client. (Emphases added).

An "objection" by an opposing party is obviously contemplated, as is the potential for a pre-trial determination of the basis for a disqualification, under Rule 4–3.7. If the trial court has no power to resolve issues relating to lawyers testifying in cases in which they also serve as advocates, unnecessary delays could be required to obtain rulings through the disciplinary process. In those instances, the trial court would not have control of the proceedings before it. The trial judge, however, is familiar with the issues and is able to make prompt decisions which will not unnecessarily lengthen the proceedings or increase the expense to the parties. Therefore, it seems that the trial court should be able, when necessary, to hear and rule on objections made pursuant to Rule 4–3.7.

This conclusion is impliedly supported by Missouri Supreme Court case law. In *Headrick v. Bailey,* 365 Mo. 160, 278 S.W.2d 737, 741 (banc 1955), the Missouri Supreme Court stated that where an attorney withdrew from one employment and accepted another employment involving a conflicting interest, the trial court "certainly had inherent power to supervise and regulate the conduct of the attorney. . . ." Similarly, in *State v. White,* 339 Mo. 1019, 99 S.W.2d 72, 75 (1936), the Missouri Supreme Court, in deciding whether a reversal was required when a prosecutor testified in a criminal case, said that "[t]he matter rested somewhat within the discretion of the trial court on the facts and involves the ethics of the prosecutor's conduct, which chiefly concerns him and the courts."

Furthermore, Missouri appellate courts have, in a number of cases, reviewed the action of trial courts in deciding issues based on the Rules of Professional Conduct. *See State v. Johnson,* 702 S.W.2d 65 (Mo. banc 1985) (holding that testimony at trial by an assistant prosecutor not assigned to that particular case does not require disqualification of all other prosecutors in the same office); *State v. Hayes,* 473 S.W.2d 688 (Mo.1971) (where a criminal conviction was reversed because the prosecutor in the case testified at the trial); *Senu–Oke v. Modern Moving Systems, Inc.,* 978 S.W.2d 426 (Mo.App. E.D.

1998) (holding that the trial court erred in overruling defendant's motion to disqualify plaintiff's counsel and in permitting him to testify at trial where his testimony formed a basis for recovery of punitive damages, it was foreseeable that he would be a necessary witness, and there was no proof that his failure to testify would work a substantial hardship on plaintiff); *State Farm Mut. Auto. Ins. v. DeCaigney*, 927 S.W.2d 907 (Mo.App. W.D.1996) (where the court relied in part on Rule 4–3.7 to affirm the trial court's refusal to permit plaintiff's attorney to testify at trial); *State v. Mason*, 862 S.W.2d 519 (Mo.App. E.D.1993) (holding that the trial court did not err in overruling defense counsel's motion to withdraw from the case on the theory that he would need to testify to inconsistent statements of another witness where there was no showing that he was the only witness who could testify to the matters asserted); *In re Marriage of Carter*, 862 S.W.2d 461 (Mo.App. S.D.1993) (finding that the trial court did not err in denying a request to disqualify wife's attorneys due to the fact that an attorney formerly employed by the law firm representing husband was now employed by the firm representing wife and there was no evidence that the attorney acquired any information about the case while working for the former firm); *State ex rel. Fleer v. Conley*, 809 S.W.2d 405 (Mo.App. E.D.1991) (holding that the trial court should not have removed defendant's counsel on the theory that he would be a necessary witness at the trial where there was doubt whether he would actually testify and no consideration had been given to the hardship that would be caused to defendant); *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137 (Mo.App. E.D.1989) (holding that the trial court did not err in overruling defendants' motion to disqualify plaintiff's counsel based on the theory that the counsel had represented defendants in the same or a substantially related matter); *Terre Du Lac Property Owners' Ass'n v. Shrum*, 661 S.W.2d 45 (Mo. App. E.D.1983) (where the court reversed the trial court's order disqualifying plaintiff's counsel because the motion to disqualify had not been timely filed).

Legitimate concern has been expressed about the use of the Rules of Professional Conduct as weapons of harassment instead of a method of insuring ethical conduct. As indicated earlier, the "Scope" section of the disciplinary rules acknowledges that their purpose "can be subverted when they are invoked by opposing parties as procedural weapons." Likewise, the Eastern District of this Court noted in *Terre Du Lac Property*, 661 S.W.2d at 48, that "[t]he purpose of the Canons of Ethics is to regulate the conduct of counsel, not a weapon to be used against the attorney's client."

We hold that Ms. Wallace's contention that a trial judge has no power to enforce Rule 4–3.7 by disqualifying an attorney is not well taken. Although we hold that the trial court does have such power, it must be exercised judiciously based on the facts and circumstances of each individual case. In doing so, the trial court should cautiously review any requests to disqualify counsel and guard against the Rule being used as a means of harassment or as a procedural weapon. Point one is denied.

Ms. Wallace raises three other points which collectively assert that the trial court erred in sustaining the motion to disqualify her attorney under Rule 4–3.7. Specifically, she argues that there were no facts presented to the trial court from which it could have concluded that her attorney would likely be a necessary witness; it was not possible from the facts presented to the trial court for it to conclude that her attorney's testimony, even if presented, would not relate to an uncontested issue; and the evidence presented to the trial court demonstrated that disqualification of her attorney would create a substantial hardship.

Prohibition will issue in three situations: (1) where there is a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction; (2) to remedy a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated; and (3) as a departure from jurisdictional grounds, it will be issued if the party can satisfy a number of conditions, often falling under the rubric of no adequate remedy by appeal. *State ex rel. Chassaing v.*

*Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994). The *Chassaing* court said:

> The third category is used in limited situations where some "absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order." (Citation omitted). Prohibition will lie when there is an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision. (Citation omitted).

*Id.*

■ This case falls within the third category which permits us to consider prohibition as a remedy even though the trial court may not have exceeded its jurisdiction in entering the order. Here, the order, if erroneously entered, could cause irreparable harm resulting in considerable hardship and expense to Ms. Wallace. For that reason, we consider Ms. Wallace's remaining points.

■ Application of the general prohibition in Rule 4–3.7 against a lawyer acting as an advocate in a trial requires a determination concerning factors including the likelihood that a lawyer will, in fact, be a necessary witness, whether his or her testimony will relate to an uncontested issue, and whether a disqualification will work substantial hardship on his or her client. Here, the trial court found that "the disqualification of the lawyers would not work a substantial hardship to either client and that the attorneys are likely to be necessary witnesses and that *the testimony* relates to contested issues and is not related to the nature and value of legal services rendered in this case." We, however, do not believe the record supports such findings.

The likelihood that a lawyer will be a "necessary" witness is the condition which prohibits him from acting as an advocate at the trial under Rule 4–3.7 unless the exceptions under that Rule apply. Here, the basis of Mr. Snow's claim that Ms. Wallace's attorney will be a necessary witness seems to be Mr. Stafford's letter of April 19, 1996, which reads:

> I had sent you a fax on April 16 after I tried to call to attempt to make arrangements for [Mr. Snow] to pick up his property on Wednesday, April 17. I gave you an alternative [date] of Saturday morning and I did not hear from you until your fax of April 18 (which I didn't see until today, April 19) and, obviously, you ignored the date of Wednesday, April 17, so you could claim the 30 days had expired [on April 18].... It appears to me that you and your client or both are intentionally trying to run up expenses and be difficult about this matter. If not, then you should ask your client to be reasonable.... The only reason for [Ms. Wallace] to put the property in storage is to be difficult and cause Mr. Snow trouble and expense.[4]

Mr. Snow makes the blanket allegation that "[t]he general nature of the subject matter of the testimony of [Ms. Wallace's attorney] concerns the removal by [Mr. Snow] of his property from the real estate owned by [Ms. Wallace] which is the essence of [Mr. Snow's] claim." This Court is unable to discern from the record exactly what it is that Ms. Wallace's attorney would be necessary to testify to. Specifically, this Court is unable to discern whether Ms. Wallace's attorney will truly be a "necessary witness" in the sense that there are things to which he will be the only one available to testify. For instance, would Ms. Wallace's attorney be asked to testify only about things which Ms. Wallace could testify herself, or conversations to which others were privy. *See State v. Werneke,* 958 S.W.2d 314, 321 (Mo.App. W.D.1997) (holding that the trial court did not err in overruling defendant's motion to disqualify prosecutor where two other people witnessed the same

---

4. This letter was actually one of many exchanged between the attorneys of Mr. Snow and Ms. Wallace. This particular letter was apparently in response to a letter written by Ms. Wallace's attorney on April 18, 1996, which read: Rather than cooperate and coordinate, as ordered by [the Judge], Mr. Snow have [sic] decided upon a course of action that is designed to harass [Ms. Wallace], rather than to accomplish the removal of his property.... The 30 days allowed by [the Judge] have expired.... [Ms. Wallace] will move the remaining property awarded to Mr. Snow into storage.

event as that about which the prosecutor testified); *State v. Mason*, 862 S.W.2d at 519 (where a defense attorney failed to show that he was the only person present at the hearing who could testify and thus there was no showing that he was a "necessary witness"). Furthermore, there is no indication that the trial court considered the possibility that at least some of the testimony allegedly sought from Ms. Wallace's attorney would violate the attorney-client privilege. Finally, because it is unclear what admissible testimony would be sought, it is unclear whether the testimony sought would even be contested by Mr. Snow.

The record also contains unrefuted evidence that the disqualification of Ms. Wallace's attorney would work a substantial hardship on her. Ms. Wallace filed an affidavit in support of her opposition to Mr. Snow's motion to disqualify her counsel which included the following statements:

1. I am adamantly opposed to the efforts of my former husband to disqualify my attorney from representing me in this lawsuit. My former husband told me, before this lawsuit was even filed, that he would make sure that Attorney Stillings would not represent me anymore, in anything. He is now attempting to make good on this threat.

2. Attorney Stillings represented me in my divorce action with my former husband, and I have developed a high degree of trust and confidence in Attorney Stillings, and that he will faithfully represent me, notwithstanding the threatening manner and hostile activities of my former husband. . . . My former husband is a private detective. I know from my own personal knowledge that as a common practice, he intentionally intimidates and threatens people. It would be extremely difficult, if not impossible, for me to find another attorney who would aggressively represent me in this lawsuit with my former husband. When I needed an attorney to represent me in my divorce, I called approximately 100 attorneys who would not represent me, either because they did not want to get cross wise [sic] with John Snow, or because John Snow did private detective work for them.

3. I am unemployed. I have paid Attorney Stillings in excess of $9,000.00 to represent me in this lawsuit. It would work a substantial hardship on me to be forced to hire another attorney.

 We also note that Mr. Snow did not file his motion to disqualify Ms. Wallace's attorney until almost two years after he filed the petition. *Terre Du Lac Property*, 661 S.W.2d at 48, suggests that the timeliness of the objection should be taken into consideration in considering the hardship to the client. There, the court stated that the purpose of the Rules of Professional Conduct is to regulate the conduct of counsel, not as a weapon to be used against the attorney's client. Thus, a motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent disqualification from being used as a strategic tool to deprive opponents of the counsel of their choice after substantial preparation has been completed. Id. One who knowingly refrains from asserting an objection promptly is deemed to have waived the objection. Id. See also *State ex rel. Fleer*, 809 S.W.2d at 405.

We conclude that the trial court's determinations that Attorney Stillings would likely be a necessary witness, his disqualification would not work a substantial hardship on Ms. Wallace, and his testimony would relate to contested issues are not supported by the record before us. We, therefore, hold that our preliminary writ of prohibition should be and is made absolute. This result is reached upon the record which was before the trial court at the time it made its rulings. Our decision is not intended to preclude additional showings before the trial court on the issue. Preliminary writ of prohibition made absolute.