POLISH ROMAN CATHOLIC ST. STANISLAUS PARISH, John Baras, William Bialczak, Father Marek Bozek, Richard Lapinski, Janice Merzweiller, Stanley Novak and Joseph Rudawski, Relators,

v.

The Honorable Bryan HETTENBACH, 22nd Judicial Circuit, City of St. Louis, Missouri, Respondent.

No. ED 93551.

Missouri Court of Appeals, Eastern District, Writ Division Two.

Feb. 2, 2010.

Richard B. Scherrer, Kenneth K. Vuylsteke, St. Louis, MO, for relators.

Bernard C. Huger, St. Louis, MO, for plaintiffs.

Maurice B. Graham, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### *Introduction*

Relators, Polish Roman Catholic St. Stanislaus Parish ("the Parish"), Parish Pastor, Father Marek Bozek, and six individual directors of the Parish Board (collectively "St. Stanislaus"), seek a writ of

prohibition ordering Respondent, Circuit Judge Bryan L. Hettenbach ("Respondent" or "the trial court"), to vacate his Judgment and Order denying St. Stanislaus' motion to disqualify the law firm of Greensfelder, Hemker & Gale, P.C. ("Greensfelder") from representing the Archdiocese of St. Louis, the Archdiocesan Administrator, Bishop Robert Hermann, and six individuals who were former parishioners of the Parish (collectively "Plaintiffs") in their action against St. Stanislaus. St. Stanislaus also requests that we direct the trial court to disqualify Greensfelder from further representing Plaintiffs. As grounds, St. Stanislaus contends that Respondent abused his discretion by failing to grant its motion to disqualify because Greensfelder entered into a co-counsel relationship with the former attorney for St. Stanislaus, Roger Krasnicki ("Krasnicki"), received confidential and privileged information from Krasnicki, coordinated each step of the underlying litigation with Krasnicki, and agreed to a Confidential Joint Litigation Agreement with Krasnicki.[1] We find that Respondent abused his discretion by failing to apply the proper legal framework to the issues presented in St. Stanislaus' motion to disqualify. The preliminary writ of prohibition is made permanent in part and quashed in part.

## Background

In the underlying lawsuit, Plaintiffs filed a petition against St. Stanislaus in July 2008 seeking, *inter alia*,; (1) a declaration that the Parish's 2001, 2004, and proposed 2008 Bylaws are invalid, null, and void; (2) a declaration that the Parish's property is subject to the Franciscan Fathers Trust and held for the benefit of the Congrega-

tion of St. Stanislaus with the Archbishop as trustee; and (3) injunctive relief removing several named directors from the Parish Board. Plaintiffs alleged that: (1) the 2001, 2004, and proposed 2008 Bylaws were invalid because they established the Parish's corporate independence from the Archdiocese, thereby preventing the Parish from maintaining a "Polish Roman Catholic Church" as required by the Parish's Articles of Agreement, original 1891 Bylaws, and Charter; (2) the Parish has failed to maintain its property in a manner required by the Franciscan Fathers Trust in which the property is held; and (3) the named directors have breached their fiduciary duties thus requiring their removal. In its answer, St. Stanislaus denied the allegations in Plaintiffs' petition and asserted several counterclaims against Plaintiffs.

On June 9, 2009, St. Stanislaus filed a motion to disqualify Greensfelder, the law firm of record for Plaintiffs, alleging that Greensfelder violated Missouri's Rules of Professional Conduct through its co-counsel relationship with Krasnicki. In support of its motion, St. Stanislaus alleged the following facts:

Krasnicki, a Parish parishioner, served as attorney for the Parish and its Board beginning in 1977 and continuing through the spring of 2008. Krasnicki publicly acknowledged his relationship with the Parish on numerous occasions, including as recently as a May 2008 email to then-Archbishop Raymond Leo Burke and the presiding judge of the Archdiocese, where Krasnicki wrote: "As former attorney for [the Parish's] Board of Directors, one of whom is Marek Bozek, I am bound by the

---

**1.** We note that Respondent disputes St. Stanislaus' characterization of Krasnicki as Greensfelder's "co-counsel", arguing that "Krasnicki was never co-counsel in the lawsuit ..., and the [Confidential Joint Litigation Agreement] does not identify or refer to Krasnicki as co-counsel." The term "co-counsel", as used here, refers to Krasnicki's alleged substantive *relationship* with Greensfelder, not Krasnicki's title.

Missouri Supreme Court Rules regarding attorney-client communications and the privilege attached thereto."

During his tenure as the Parish's attorney, Krasnicki represented the Parish on a wide range of legal matters, including but not limited to tax, employment, employment discrimination, collections, trust, and corporate transactions. Krasnicki also advised the Parish and its Board regarding the 2004 and proposed 2008 Bylaw amendments, assisted in drafting the Bylaws, and advised the Parish on the Bylaws' validity. Additionally, Krasnicki participated in negotiating and drafting the employment agreement with the Parish's Pastor, Father Bozek, and represented Father Bozek during his deportation hearings. Krasnicki also advised the Parish Board concerning the instant lawsuit before Plaintiffs filed their petition.

Despite the legal services Krasnicki performed on behalf of the Parish, the Parish Board declared that Krasnicki was not its attorney on two occasions. First, a 2004 letter by the Parish Board Chairman stated, "To whom it may concern . . . [f]or civil law purposes, Roger C. Krasnicki is not the attorney for the Parish and neither is he the Canon Lawyer for the Parish and has no power or authority to act in either such capacity." The letter notwithstanding, Krasnicki continued to hold himself out as the Parish's attorney and provide legal services to the Parish. Just prior to the instant litigation, on March 19, 2008, the Chairman again issued a letter accepting Krasnicki's "resignation as a spokesman and advisor for the Board," stating that Krasnicki "never engaged as legal counsel to the Board[,]" but that "[a]ll obligations of confidentiality that apply to prior communications remain in effect."

According to St. Stanislaus, in the summer of 2007, Krasnicki "began his campaign to take control of the [Parish's] Board, to pursue his own personal agenda, and to use his role as attorney against [St. Stanislaus] and the Board of Directors." Although not an attorney of record, Krasnicki began representing the individual plaintiffs who were former parishioners of St. Stanislaus in the current litigation. Additionally, Krasnicki commenced working with Greensfelder as it assisted the Archdiocese to prepare for the instant litigation. Formalizing their relationship, Greensfelder and Krasnicki entered into a "Confidential Joint Litigation Agreement" on July 25, 2008, whereby the parties agreed to share confidential information and work product.

After Plaintiffs filed their petition in July 2008, St. Stanislaus several times requested from Krasnicki his client file developed during his representation of the Parish. In response to St. Stanislaus' requests, Krasnicki sent a letter dated August 20, 2008, stating that "it is impossible for me to turn over any of my records regarding [the Parish] since they were previously disposed of."

In January 2009, St. Stanislaus again requested Krasnicki's client file. On February 11, Krasnicki responded, "I suggest that if you wish to review my documents that you obtain a subpoena for them." On February 15, Krasnicki was served with a subpoena, and on April 10, Krasnicki produced over 17,000 pages. The documents included Krasnicki's files on St. Stanislaus as well as correspondence between Krasnicki and Greensfelder attorneys regarding the instant litigation.

After receiving the documents from Krasnicki, counsel for St. Stanislaus contacted Krasnicki's attorney to raise concerns that Krasnicki's production was incomplete. At this point, St. Stanislaus first learned of the existence of Krasnicki and Greensfelder's Confidential Joint Litigation Agreement from Krasnicki's attorney, who told St. Stanislaus that Greens-

felder attorneys had instructed Krasnicki not to produce the agreement in discovery.

During a status conference with the trial court on May 15, 2009, St. Stanislaus' counsel asked Greensfelder about its relationship with Krasnicki and the existence of a Confidential Joint Litigation Agreement. The Greensfelder attorneys confirmed the existence of the agreement, and the trial court subsequently entered an order requiring Plaintiffs to "produce any Confidentiality or Joint Litigation Agreement by May 18, 2009." As ordered, Plaintiffs produced the Confidential Joint Litigation Agreement between Greensfelder and Krasnicki on May 18.

The Confidential Joint Litigation Agreement, signed July 25, 2008, purports to "confirm and memorialize" an "earlier Joint Litigation Agreement reached between the parties and effective as of June 1, 2008." The agreement further provides that in the "Lawsuit" styled *Bernice Krauze et al. v. Polish Roman Catholic St. Stanislaus Parish*", all communications between Plaintiffs, Greensfelder, and Krasnicki, as well as all work product and communications exchanged between Greensfelder and Krasnicki shall remain privileged and protected from disclosure.

On June 9, 2009, having received the 17,000 pages in discovery from Krasnicki and the Confidential Joint Litigation Agreement from Plaintiffs, St. Stanislaus filed its motion to disqualify Greensfelder based on Greensfelder's co-counsel relationship with Krasnicki. Specifically, St. Stanislaus contended, among other things, that "courts will … impute any conflicts of the conflicted attorney (i.e., Krasnicki) to a law firm (i.e., Greensfelder) where the conflicted attorney and the law firm are acting as co-counsel in a matter, particularly where the conflicted attorney has shared with the law firm confidential information about his former client." (parentheticals in the original). St. Stanislaus

argued that Greensfelder's disqualification was necessary because Krasnicki, through his co-counsel relationship with Greensfelder, had shared privileged and confidential information relating to his prior representation of St. Stanislaus. Plaintiffs did not file a written response to St. Stanislaus' motion to disqualify.

The trial court held several conferences for the parties to discuss the motion to disqualify. Following the conferences, the trial court entered several orders requiring Greensfelder and Krasnicki to produce any documented communications between Greensfelder and Krasnicki, and all documents previously withheld from production on the basis of the Confidential Joint Litigation Agreement. Greensfelder produced a privilege log describing 1,209 pages of communications and documents exchanged with Krasnicki, including 255 e-mails between Greensfelder and Krasnicki.

On August 13, 2009, the trial court entered its Judgment and Order denying St. Stanislaus' motion to disqualify Greensfelder. This action in prohibition follows.

### Writ of Prohibition

St. Stanislaus' motion to disqualify raises important legal issues regarding conflicts of interest with former clients and the imputation of conflicts to co-counsel. Our Supreme Court has emphasized that the public must have confidence in the integrity of the judicial system, and "every 'client has a right to expect the loyalty of his attorney in the matter for which he is retained.'" *In re Carey*, 89 S.W.3d 477, 496 (Mo. banc 2002) (quoting *Kaselaan & D'Angelo Assoc., Inc. v. D'Angelo*, 144 F.R.D. 235, 239 n. 5 (D.N.J.1992)). It is the duty of the court system to "not only dispense justice, but equally important, to maintain the integrity of the judicial system." *Id.* (quoting *Contant v. Kawasaki*

*Motors Corp.,* 826 F.Supp. 427, 429 (M.D.Fla.1993)).

■ "Prohibition will lie when there is an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision." *State ex rel. Wallace v. Munton,* 989 S.W.2d 641, 645 (Mo.App. S.D. 1999) (quoting *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994)). Interlocutory review by writ of prohibition is proper under the instant circumstances because the issues raised in St. Stanislaus' motion would otherwise escape our review, and the trial court's Judgment and Order, if erroneously entered, would cause considerable hardship and expense. *See id.* (finding writ of prohibition appropriate where trial judge erroneously ruled on motion to disqualify).

### Standard of Review

■ "The disqualification of an attorney is a matter that lies within the sound discretion of the trial court." *Raster v. Ameristar Casinos, Inc.,* 280 S.W.3d 120, 133 (Mo.App. E.D.2009) (citing *State ex rel Burns v. Richards,* 248 S.W.3d 603 (Mo. banc 2008)). A writ of prohibition is appropriate when a judge's denial of a motion to disqualify counsel amounts to an abuse of discretion. *Richards,* 248 S.W.3d at 604.

### Discussion

In its petition for writ of prohibition, St. Stanislaus contends that Respondent abused his discretion by denying its motion to disqualify Greensfelder based on Greensfelder's co-counsel relationship with Krasnicki. Specifically, St. Stanislaus asserts that "[d]isqualification is necessary because Greensfelder is co-counsel with Roger Krasnicki, the former attorney for the defendants, has received confidential and privileged information from Krasnicki, has coordinated each step of the litigation with Krasnicki, has based pleadings and discovery on his advice, has induced Krasnicki to violate his fiduciary duties to his former clients, has teamed with him as co-counsel in a Joint Litigation Agreement, and has otherwise acted in violation of the Rules of Professional Conduct."

Opposing St. Stanislaus' request for a writ of prohibition, Respondent filed his answers and defenses, denying St. Stanislaus allegations and any professional misconduct on the part of Greensfelder. Additionally, Respondent claims that St. Stanislaus failed to timely file its motion to disqualify, thereby resulting in a waiver.

*A. Timeliness of the Motion to Disqualify*

■ As an initial matter, we consider whether St. Stanislaus timely filed its motion to disqualify. Respondent alleges that St. Stanislaus failed to timely file its motion to disqualify, and therefore waived any objection to Greensfelder's representation of Plaintiffs. Specifically, Respondent claims that St. Stanislaus knew of Greensfelder's relationship with Krasnicki as early as March 12, 2009 during a deposition conducted by St. Stanislaus' counsel where one of the Plaintiffs testified that Krasnicki "served as the attorney and as an intermediary with the [Greensfelder] lawyers for the Archdiocese for all the Plaintiffs." Based on the testimony at the March 12, 2009 deposition, Respondent contends that St. Stanislaus unreasonably delayed filing its motion to disqualify until June 9, 2009.

Conversely, St. Stanislaus asserts that it did not fully understand Greensfelder and Krasnicki's relationship until it received the 17,000 pages of discovery from Krasnicki on April 10, 2009 and the Confidential Joint Litigation Agreement from Plaintiffs on May 18, 2009. Allowing reasonable

time to review the discovered materials and for legal research, St. Stanislaus contends that it promptly filed its motion to disqualify on June 9, 2009.

■ When determining whether to grant a motion to disqualify counsel, a trial court may consider the motion's timeliness. *See Munton,* 989 S.W.2d at 647. A timeliness requirement ensures that the Rules of Professional Conduct are applied for their intended purpose, to regulate the conduct of counsel, and not as a weapon against an attorney's client. *Id.* Accordingly, "[a] motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent the party from using disqualification as a strategic tool to deprive his opponent of counsel of his choice after substantial preparation has been completed." *Terre Du Lac Property Owners' Ass'n, Inc. v. Shrum,* 661 S.W.2d 45, 48 (Mo.App. E.D.1983). A party who knowingly refrains from asserting a prompt objection to opposing counsel is deemed to have waived the objection. *Id.*

■ Importantly, the timeliness of a motion to disqualify is not measured by the mere length of delay—i.e., a court cannot simply calculate the amount of elapsed time between the occurrence of the professional misconduct or conflict of interest and the filing of the motion to disqualify. *See Buckley v. Airshield Corp.,* 908 F.Supp. 299, 307 (D.Md.1995). Rather, the relevant time period commences when the moving party either first learned or reasonably should have learned of the professional misconduct or conflict of interest. *See, e.g., Weeks v. Indep. Sch. Dist. No. I–89,* 230 F.3d 1201, 1212–13 (10th Cir.2000).

In its Judgment and Order, the trial court recognized that "[a] key consideration here is the timeliness of the request to disqualify." The trial court, however, provided no direct analysis applying the above-described law to the relevant facts and rendered no express determination with respect to timeliness. Nevertheless, the trial court issued several factual findings on the issue of timeliness. Based on the pertinent findings of the trial court as well as the undisputed facts gleaned from the record, it is apparent that St. Stanislaus timely filed its motion to disqualify.

First, the trial court agreed with St. Stanislaus' contention that it "filed [its] motion to disqualify immediately upon discovery of the joint litigation agreement." The trial court further recognized that the Confidential Joint Litigation Agreement was the "gravamen" of St. Stanislaus' motion. We likewise agree that the Confidential Joint Litigation Agreement, which formalizes Greensfelder and Krasnicki's relationship, is a significant factor in assessing the existence of Greensfelder's conflict of interest. The fact that St. Stanislaus promptly filed its motion after obtaining the litigation agreement militates strongly in favor of the conclusion that St. Stanislaus timely filed its motion.

Second, and most significantly, the trial court expressly found that St. Stanislaus had not "filed [its] motion in bad faith or solely for strategic purposes." This finding is paramount because the requirement of timely filing is intended to prevent the moving party from using the Rules of Professional Conduct as a strategic tool to deprive the opposing party of his or her chosen counsel. *See Shrum,* 661 S.W.2d at 48.

Finally, we note that the trial court also concluded that because St. Stanislaus was well-acquainted with Krasnicki, "Mr. Krasnicki's role—whatever it has been—in fomenting the current litigation was known before the details of the joint litigation agreement were discovered by St. Stanislaus." Although this finding would certainly bear on the timeliness of a motion to

disqualify Krasnicki (had he entered an appearance), it is not particularly relevant to the analysis of St. Stanislaus' motion to disqualify Greensfelder. More to the point, the timeliness of St. Stanislaus' motion to disqualify Greensfelder hinges on when St. Stanislaus became fully aware of the scope and extent of Greensfelder's relationship with Krasnicki, not when St. Stanislaus learned of Krasnicki's role in initiating the litigation.

Accordingly, we conclude that St. Stanislaus timely filed its motion to disqualify based on the trial court's findings that St. Stanislaus filed its motion promptly after receiving the Confidential Joint Litigation Agreement and did not file its motion either in bad faith or solely for strategic purposes. In addition to the trial court's findings, the record also supports a finding of timeliness. St. Stanislaus filed its motion approximately two months after receiving the 17,000 pages of discovery from Krasnicki. The voluminous discovery from Krasnicki further revealed the extent of Krasnicki's communications and relationship with Greensfelder, and St. Stanislaus relied on the discovery extensively in its motion to disqualify.[2]

### B. Disqualification of Greensfelder

Having determined that St. Stanislaus timely filed its motion to disqualify, we consider St. Stanislaus' contention that Greensfelder's disqualification is necessary in light of Greensfelder's co-counsel relationship with Krasnicki. St. Stanislaus' argument rests on two separate inquiries: (1) whether Krasnicki has a conflict of interest with St. Stanislaus, and (2) if so, whether Krasnicki's conflict is properly imputed to Greensfelder, thus requiring Greensfelder's disqualification.

### 1. Krasnicki's conflict of interest with St. Stanislaus

To determine whether Krasnicki has a conflict of interest with St. Stanislaus, we consider Supreme Court Rule 4–1.9, "which governs conflict of interest with former clients."[3] In re Carey, 89 S.W.3d at 492. In pertinent part, Rule 4–1.9 provides:

A lawyer who has *formerly represented* a client in a matter shall not thereafter represent another person in the *same or a substantially related matter* in which that person's interests are *materially adverse* to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Mo. Sup.Ct. Rule 4–1.9(a) (emphasis added). As our Supreme Court emphasized in In re Carey, "[i]mportant policies behind [Rule 4–1.9] include the promotion of 'fundamental fairness ... by prohibiting an attorney from using an informational advantage gained in the course of a former representation, the desire to promote client disclosure of all pertinent information ..., and the desire to promote confidence in the integrity of the judicial system.'" 89 S.W.3d at 493 (quoting Columbus Credit Co. v. Evans, 82 Ohio App.3d 798, 613 N.E.2d 671, 676 (1992)).

To establish a conflict of interest under Rule 4–1.9, a movant must prove that: (1) the attorney had a former attorney-client relationship with the mov-

2. We note that the record also discloses that to the extent there was a delay, some of it was attributable to Krasnicki's refusal to provide access to his files and other relevant materials.

3. Although Rule 4–1.9 is part of the Supreme Court's Rules of Professional Conduct, Missouri courts have utilized Rule 4–1.9 when evaluating whether to grant a party's motion to disqualify opposing counsel based on a conflict of interest with a former client. See Richards, 248 S.W.3d at 605; Misemer v. Freda's Rest., 961 S.W.2d 120, 122–23 (Mo.App. S.D.1998); Massey–Ferguson Credit Corp. v. Black, 764 S.W.2d 137, 141–42 (Mo.App. E.D. 1989).

ant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant. Mo. Sup.Ct. Rule 4–1.9(a); *see also Essex Chemical Corp. & Essex Specialty Prods., Inc. v. Hartford Accident & Indem. Co*, 993 F.Supp. 241, 246 (D.N.J.1998). Here, there is no dispute that the interests of Krasnicki's current clients, Plaintiffs, are materially adverse to Krasnicki's former client, St. Stanislaus. Thus, to determine whether Krasnicki has a conflict of interest, the trial court must consider: (1) whether Krasnicki had a former attorney-client relationship with St. Stanislaus; and (2) if so, whether Krasnicki's former representation involved the same or substantially related matters at issue in the current litigation.

Regarding the first issue, St. Stanislaus claims that Krasnicki engaged in an attorney-client relationship with the Parish and served as its attorney from 1977 until spring 2008. In support, St. Stanislaus identifies numerous instances where Krasnicki and other St. Stanislaus parishioners, including one of the Plaintiffs, acknowledged Krasnicki's role as attorney for the Parish.

In response, Respondent contends that Krasnicki was, at most, only a "spokesman" for the Parish and its Board. Respondent further notes that in 2004 and 2008, the Chairman of the Parish's Board represented that Krasnicki was not and never had been St. Stanislaus' attorney.

An attorney-client relationship is established when a prospective client seeks and receives legal advice and assistance from an attorney who intends to provide legal advice and assistance to the prospective client. *Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 736 (Mo.App. W.D. 2005). In determining whether the legal advice and assistance of an attorney is sought and received, courts look to the substantive nature of the contacts within the relationship, "regardless of what formal or procedural incidents have occurred[.]" *McFadden v. State*, 256 S.W.3d 103, 107 (Mo. banc 2008). Payment for legal services is not a prerequisite to the formation of an attorney-client relationship. *U.S. v. Bailey*, 327 F.3d 1131, 1139 (10th Cir.2003) ("For there to have been an attorney-client relationship, the parties need not have executed a formal contract. Nor is the existence of a relationship dependent upon the payment of fees."). Proper examination of the alleged attorney-client relationship between Krasnicki and St. Stanislaus requires exploration into the substantive nature of the contacts Krasnicki had with St. Stanislaus, including the legal advice and assistance St. Stanislaus requested as well as whether Krasnicki provided the requested advice and assistance. *See McFadden*, 256 S.W.3d at 107.

The trial court described Krasnicki as "a St. Stanislaus parishioner and a lawyer who for years was involved in many Parish activities and who *may* have had an attorney-client relationship with the Parish and possibly the individual parishioners now being sued by Plaintiffs ..." (emphasis added). The trial court further found that Krasnicki "use[d] his legal training to play many roles over the years for the Parish, the parish board, and other parishioners."

Although certain trial court findings clearly support the existence of an attorney-client relationship, it did not determine the issue.[4] To do so, the trial court

---

4. The trial court also found that "[i]t appears that Mr. Krasnicki was never formally retained or paid as a lawyer for the Parish." As mentioned above, a formal contract or payment for legal services is not a prerequisite

must analyze the evidence delineating the substantive nature of the contacts between Krasnicki and the Parish, its Board, its pastor, and the other individual defendants, and if the trial court finds that an attorney-client relationship existed, then it must consider the second issue: whether Krasnicki's former representation involved the same or substantially related matters present in the current lawsuit.

Regarding the second issue, St. Stanislaus contends that Krasnicki represented St. Stanislaus on the same matters present in the instant lawsuit. Specifically, St. Stanislaus alleges that Krasnicki's representation included advising the Board on the 2004 Bylaw amendments, assisting in drafting the 2004 and proposed 2008 Bylaws, recruiting, negotiating, and drafting Father Bozek's employment agreement, representing Father Bozek in his deportation hearings, and advising St. Stanislaus on key issues in the instant litigation—e.g., St. Stanislaus' corporate independence from the Archdiocese. Respondent does not specifically deny St. Stanislaus' allegations, but rather maintains that Krasnicki never served as St. Stanislaus' attorney.[5] The trial court did not attempt to determine whether Krasnicki represented St. Stanislaus in the same or substantially related matters involved in the current litigation. Instead, the trial court ceased its analysis of the subject after declaring that it had "at-

tempted to focus clearly through the fog of case law on what constitutes [a] substantial relationship ... in light of Rule 4–1.9."

Our Supreme Court, in *In re Carey*, 89 S.W.3d at 492–96, clearly articulated Missouri's approach to determining the existence of a "substantial relationship" under Rule 4–1.9. Specifically, the *Carey* Court stated:

Our approach is consistent with that set out [by the 7th Circuit and Kansas Supreme Court], combining an analysis of both the facts and issues in determining substantial relationship. In *Smith* we said that the court employs a focused approach, where the court examines the relevant facts of the case in order to determine whether the various matters are substantially related. Whether there is a "substantial relationship" involves a full consideration of the facts and circumstances in each case. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question. The key to the analysis is whether there was a central issue common to both representations.

The fact that a lawyer has previously represented a client does not automatically preclude the lawyer from opposing that client in a later representation. The court must determine whether con-

---

for establishing an attorney-client relationship. *Bailey*, 327 F.3d at 1139; *see also McFadden*, 256 S.W.3d at 107.

**5.** In the alternative, Respondent argues that even if Krasnicki established an attorney-client relationship with St. Stanislaus, the Board, through its 2004 and 2008 representations that Krasnicki was never St. Stanislaus' attorney, "waived any claim of an alleged attorney-client privilege with respect to all communications with Krasnicki." In support of its argument, Respondent relies on *Commodity Futures Trading Commission v. Wein-*

*traub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), where the Supreme Court held that "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Id.* at 348, 105 S.Ct. 1986. Respondent's reliance on *Weintraub*, however, is misplaced because neither of the Board's statements expressly waived the attorney-client privilege. Indeed, the 2008 statement explicitly warns that "[a]ll obligations of confidentiality that apply to prior communications remain in effect."

fidential information acquired in the course of representing the former client is relevant to the issues raised in the current litigation. The "appearance" of impropriety must be more than a fanciful possibility. It must have a rational basis. The court's conclusion must be based on a close and careful analysis of the record. Without such an analysis, the test serves as a substitute for analysis rather than a guide to it. It is easier to find "doubt" than to resolve difficult questions of law and ethics.

*Id.* at 494 (citations, quotation marks, and internal alterations omitted); *see also Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978); *Chrispens v. Coastal Ref. & Mktg., Inc.,* 257 Kan. 745, 897 P.2d 104, 111 (1995).

■ In addition to the foregoing, the *Carey* Court adopted the following non-exhaustive list of six factors to consider when determining whether a former representation included matters substantially related to the current representation. The factors include whether:

> (1) the case involved the same client and the matters or transactions in question are relatively interconnected or reveal the client's pattern of conduct; (2) the lawyer had interviewed a witness who was key in both cases; (3) the lawyer's knowledge of a former client's negotiation strategies was relevant; (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant; (5) a common subject matter, issues and causes of action existed; and (6) information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies.

*Carey,* 89 S.W.3d at 494 (quoting *Chrispens,* 897 P.2d at 112). Even though the list includes six factors, in some cases, one factor, if significant enough, is sufficient to establish a substantial relationship as contemplated by Rule 4–1.9. *Id.*

■ Although the "substantially related" test under Rule 4–1.9 involves a highly factual analysis of the former and current representations, the test does not require that the former client prove that actual confidences were disclosed. *Id.* at 493 n. 14. Such an inquiry would improperly require the very disclosure Rule 4–1.9 is intended to protect. *Id.*; *see also* Rule 4–1.9 cmt. 3 ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."). Rather, the primary concern of Rule 4–1.9 is the possibility, or the appearance of the possibility, that the attorney received confidential information from his or her former client. *Id.* Most importantly, "[w]hen a substantial relationship is found, this Court will presume that confidences were disclosed for conflict of interest purposes." *Id.* (citing *Westinghouse Elec. Corp.,* 588 F.2d at 224–25; *Chrispens,* 897 P.2d at 112).

Here, proper application of *Carey* and Rule 4–1.9 is crucial to determining the merits of St. Stanislaus' motion to disqualify. With the aid of *Carey,* the trial court must establish whether Krasnicki's former representation of St. Stanislaus (assuming the trial court first determines that Krasnicki had an attorney-client relationship with St. Stanislaus) included the same or substantially related matters as the instant litigation. If the two representations are the same or substantially related, Krasnicki has a conflict of interest with St. Stanislaus under Rule 4–1.9.

*2. Imputation of Krasnicki's conflict to Greensfelder*

If the trial court determines that Krasnicki has a conflict of interest with St. Stanislaus, the trial court must resolve

whether to impute Krasnicki's conflict to Greensfelder. St. Stanislaus contends that imputation is required because Krasnicki shared confidences obtained during his representation of the Parish with Greensfelder and assisted Greensfelder in preparing this lawsuit. In particular, St. Stanislaus alleges that Krasnicki worked closely with Greensfelder by providing Greensfelder with the Parish's corporate documents, assisting in drafting Plaintiff's petition, preparing Greensfelder's attorneys for depositions, and providing comments, insights, and advice regarding documents received from St. Stanislaus in discovery. As further evidence of Krasnicki and Greensfelder's relationship in this litigation, St. Stanislaus relies on the Confidential Joint Litigation Agreement, which formalizes Greensfelder and Krasnicki's co-counsel relationship and allows for the free flow of confidences between the parties.

In response, Respondent claims that disqualification is not required because Krasnicki has not disclosed any confidential or privileged information to Greensfelder. Specifically, Respondent contends that all of the information Krasnicki provided Greensfelder was either information Krasnicki learned in his capacity as a parishioner at the Parish or public information and, thus, no longer confidential.

 Disqualification based on the imputation of a co-counsel's conflict of interest to an attorney is required when the attorney, through his or her relationship with co-counsel, was in a position to receive relevant confidences regarding the party seeking disqualification. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir.1977). To resolve this issue, courts have utilized a burden-shifting framework that employs a rebuttable presumption that co-counsel has disclosed confidences to the attorney. *See In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 81 (Tex.1998) (citing *Baker v. Bridge-*

*stone/Firestone, Inc.*, 893 F.Supp. 1349, 1362–64 (N.D.Ohio 1995); *Fund of Funds, Ltd.*, 567 F.2d 225; and citing generally Paul R. Taskier & Alan H. Casper, *Vicarious Disqualification of Co-Counsel Because of "Taint,"* 1 GEO. J. LEGAL ETHICS 155, 189 (Summer 1987)). Under the burden-shifting framework, a party seeking disqualification bears the initial burden of raising the presumption of shared confidences by either offering direct evidence of disclosure or, alternatively, "by showing substantial communications, joint preparation for litigation or the apparent receipt of confidences." *Baker*, 893 F.Supp. at 1364. Once the moving party has satisfied this initial burden, a rebuttable presumption arises that co-counsel shared confidential information with the attorney. *In re Am. Home Prods. Corp.*, 985 S.W.2d at 81. The party opposing disqualification then has the opportunity to rebut the presumption by either contesting the existence of the facts relied on by the movant or rebutting the presumed fact by disclosing the full extent of exchanged information and showing that co-counsel did not in fact share confidential information. *Baker*, 893 F.Supp. at 1362–64. If the non-moving party presents sufficient rebuttal evidence, "the presumption falls, and the court then may weigh that evidence against any remaining *inference* of [shared confidences] created by the base facts of the rebutted presumption." *Id.* at 1364 (emphasis in the original).

 In the context of this case, application of the burden-shifting framework operates as follows: If St. Stanislaus demonstrates that Krasnicki divulged confidences to Greensfelder and/or worked closely in assisting Greensfelder in preparing the underlying lawsuit, St. Stanislaus successfully raises a rebuttable presumption of shared confidences. *See, e.g., Fund of Funds*, 567 F.2d at 235–36 (disqualify-

ing a firm whose lawyers had a close "working relationship" with the disqualified attorney, thereby raising a presumption of "potentially improper disclosure."); *see also NCK Org. Ltd. v. Bregman,* 542 F.2d 128, 134 (2d Cir.1976) (similar). Plaintiffs may then rebut the presumption of shared confidences by producing competent evidence showing that Krasnicki only provided Greensfelder non-confidential information.[6] *See, e.g., Baybrook Homes v. Banyan Constr. & Dev., Inc.,* 991 F.Supp. 1440, 1446–47 (M.D.Fla.1997) (holding that despite attorney and co-counsel's lengthy interaction, disqualification was not appropriate because attorney did not have access to co-counsel's confidential files or information.).

The trial court did not reach the issue of whether to impute Krasnicki's conflict of interest to Greensfelder. On remand, if the trial court determines that Krasnicki has a conflict of interest under Rule 4–1.9, the trial court must then apply the burden shifting framework described above to determine whether Krasnicki's conflict is properly imputed to Greensfelder, thus requiring Greensfelder's disqualification.

### Conclusion

Based on the foregoing we find that Respondent abused his discretion in failing to consider and apply the proper legal framework with respect to the merits of St. Stanislaus' motion. Accordingly, we direct Respondent to vacate the Judgment and Order denying St. Stanislaus' motion, but decline to direct Respondent to enter an order disqualifying Greensfelder. We remand the matter for proceedings consistent with this opinion. The preliminary writ of prohibition is made permanent in part and quashed in part.

CLIFFORD H. AHRENS and ROBERT G. DOWD, JR., JJ., Concur.

---

**6.** We note that in Respondent's answer to St. Stanislaus' petition for writ of prohibition, Respondent conclusorily states that the information Krasnicki provided to Greensfelder was not confidential. To successfully rebut the presumption of shared confidences between co-counsel, "the rebutting party must offer more than a conclusory denial of taint. He must provide probative and material evidence concerning the relationship between the challenged attorney and the movant's attorney tending to show that the former has not been exposed to confidential information." *Baker,* 893 F.Supp. at 1363; *see also* Taskier & Casper, GEO. J. LEGAL ETHICS at 189 ("[T]he presumption of taint raised can be rebutted by affidavits, time sheets, memoranda, or other evidence that sufficiently refutes the basis for the presumption. Failure to rebut the presumption of taint should result in the vicarious disqualification of the challenged counsel")